CAROL ROBINSON, Plaintiff-Appellant, v. ST. CLAIR COUNTY, Defendant-Appellee.

Fifth District   No. 5—85—0017

Opinion filed June 2, 1986.

Thomas Daley, of Cueto, Daley, Williams & Moore, Ltd., of Belleville, for appellant.

Walker & Williams, P.C., of Belleville (Donald J. Dahlmann, James C. Cook, and Robert R. Coates, of counsel), for appellee.

JUSTICE JONES delivered the opinion of the court:

The plaintiff, Carol Robinson, appeals the trial court's dismissal with prejudice of her two-count complaint. The first count was premised on a bailment theory and the second sought damages for conversion. The trial court dismissed the complaint with prejudice for failure to state a cause of action. The question on appeal is whether the trial court erred in its determination that plaintiff's complaint failed to state a cause of action. We find no error and, accordingly, affirm.

In count I, the plaintiff alleged that when she was taken into custody at the St. Clair county jail on November 27, 1983, certain items of her personal property, including a medical card for aid to families with dependent children (AFDC card), were impounded and held for her by the officers at the jail. She further alleged that during her incarceration, her family and friends made numerous attempts to obtain the card in order to obtain medical services for her infant son, Joseph Robinson. Plaintiff further alleged that on numerous occasions she had requested that the jailers transfer the card. Specifically, she alleged that when Wyatt Byran appeared at the jail on December 1, 1984 (should have read 1983), to receive the card, the St. Clair County jail officers refused to release it to him despite having earlier agreed to do so. The complaint then alleges that, as a result, plaintiff's infant son was denied medical care and died of pneumonia at home. It is the plaintiff's position that, in refusing to transfer the card, the defendant negligently breached both the bailment contract and the officially adopted St. Clair County jail procedures. Plaintiff finally alleges that as a result of her son's death, she was denied the pecuniary support and the loss of society of her infant child, resulting in a loss to her in excess of $15,000.

In count II, the plaintiff proceeded under a theory of conversion. She alleged that the defendant knowingly asserted unauthorized control over plaintiff's property, the AFDC card, in violation of statute (Ill. Rev. Stat. 1983, ch. 38, par. 16—1). According to plaintiff, this resulted in plaintiff's inability to control her property and to obtain medical treatment for her child. Plaintiff demanded over $15,000 for actual damages and over $15,000 for punitive damages.

The defendant, St. Clair County, filed a motion to dismiss the plaintiff's complaint on the ground that it failed to state a cause of action. The motion asserted that count I did not establish the creation of an implied bailment since the complaint failed to aver sufficient facts to establish the existence of a bailment and because a medical card does not constitute "goods" within the meaning of a bailment action. Moreover, the county urged that count I was insufficient as a matter of law to state a cause of action against the defendant since the complaint failed to set forth sufficient facts that would causally connect the event complained of to the death of plaintiff's son.

The county also moved to dismiss count II of the complaint for failing to state a cause of action against the defendant. In support, the county alleged that count II was based upon an alleged violation of section 16—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 16—1) and that the Criminal Code of 1961 does not provide for the imposition of civil liability or civil penalties. Moreover, the county asserted that count II failed to establish any causal connection between the conduct complained of and the damages alleged. The county moved alternatively to strike plaintiff's request for punitive damages since, under section 2—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 2—102), a local public entity is not liable for punitive or exemplary damages.

On December 17, 1984, the trial court granted the county's motion and dismissed counts I and II of the plaintiff's complaint with prejudice for failing to state a cause of action. The plaintiff has appealed.

■■■ Count I of plaintiff's complaint seeks recovery under a bailment theory. In order to properly plead the existence of and the right to recovery under a bailment theory, the following elements must be alleged: an agreement, express or implied, to create a bailment, delivery of the property in good condition, acceptance of the items bailed by the bailee, and nonreturn or redelivery of the property in a damaged condition. (*Wright v. Autohaus Fortense, Inc.* (1984), 129 Ill. App. 3d 422, 472 N.E.2d 593; *Interlake, Inc. v. Kansas Power & Light Co.* (1979), 79 Ill. App. 3d 679, 398 N.E.2d 945.) A bailment may be established by implication, either as an implied-in-fact bailment or an implied-in-law bailment (79 Ill. App. 3d 679, 398 N.E.2d 945); and it may involve either tangible property or intangible property, such as documents evidencing certain rights (*Kirby v. Chicago City Bank & Trust Co.* (1980), 82 Ill. App. 3d 1113, 403 N.E.2d 720; *Berglund v. Roosevelt University* (1974), 18 Ill. App. 3d 842, 310

N.E.2d 773). In order to establish liability in this case, the plaintiff had to show the existence of a bailment and that the bailment was somehow breached by the bailee, either through his failure to exercise reasonable care or to adhere to the terms of the bailment contract, thus resulting in damage to the plaintiff bailor.

■ Although the trial court did not specify a particular basis for its order dismissing plaintiff's complaint, we believe it was correct and that the basis was that the "medical card" plaintiff refers to in her complaint would not constitute goods that could be the subject of a bailment.

We are not cited, and are unable to find, any Illinois case that considers anything of the nature of a "medical card" in the context of a bailment action. Admittedly, the range of property that may be the subject of a bailment is very broad. We quote from 8 C.J.S. *Bailments* sec. 12 (1962):

> "In conformity with the definitions of bailment, which embody delivery of personalty as an element, *** the subject matter of a bailment must be a chattel or personal property. Any kind of personal property in existence may be the subject of a bailment, including choses in action when they represent rights in existence and assignable, and are capable of delivery, either actual or constructive.
>
> *Existence and ownership of property.* Property that is not in existence, or that is to be acquired by a person in the future, is not bailable, that is, no contract with respect to such property can operate by way of bailment until the property has come into existence, or until title thereto or possession thereof has been acquired by the bailor, and until it has been taken into possession by the bailee."

The "medical card" plaintiff refers to in her complaint is a medical eligibility card issued by the Department of Public Aid to qualified persons. Section 4—4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1983, ch. 23, par. 4—4) grants entitlement to medical assistance to children and adults qualified for aid to be provided under article V of the Code (Ill. Rev. Stat. 1983, ch. 23, par. 1—2 *et seq.*). As a recipient of aid to families with dependent children, plaintiff, and the deceased minor, would have been eligible for medical assistance to be provided under article V. The provisions of article V need not be discussed in any detail here.

The applicable provisions of the Illinois Public Aid Code make no mention of a medical eligibility card. Such card is issued pursuant to regulations of the Department of Public Aid, which we may judicially

note. The card is issued to the person who has established entitlement to aid according to statute and the rules and regulations of the Department. In the case of a person receiving aid to dependent children, the medical care entitlement includes minor children for whom aid is being furnished. Each medical eligibility card, commonly called a "green card," contains a case number, the individual's name, number and birthdate. Children's names listed on the card are assigned an individual number. A new card is issued each month.

The medical eligibility card, or green card, is not property and does not entitle its holder or the persons named thereon to property. It is symbolic of a status; it reflects the entitlement to medical assistance that has been established and determined by the Department of Public Aid. The green card has no intrinsic value and it does not represent anything of intrinsic value. It cannot be sold, exchanged, assigned or otherwise transferred, and it cannot be pledged or given as security. The entitlement to medical assistance that the green card symbolizes cannot be transferred by its holder to any other person. Its sole use is to demonstrate to suppliers of medical services the entitlement of medical benefits of the persons named on the card. However, the card itself does not establish entitlement. As stated, the entitlement is determined and extended by the Department of Public Aid, and the listing on the rolls of the Department following their entitlement-determination procedures is the sole criterion by which entitlement to medical services is evidenced. If the holder of a green card loses or misplaces it, the holder's entitlement to medical assistance does not terminate. In the event the green card is lost or for some other reason is not in the possession of the person seeking medical services, it is common practice to call the local Illinois public aid office to determine whether entitlement to medical assistance has been established. On the other hand, the mere fact that a person is in possession of a green card does not automatically entitle him or her to medical services described in article V of the Code, for the entitlement can be revoked or withdrawn by the Department of Public Aid at any time the holder of the green card becomes ineligible for failure to meet the applicable criteria.

■ In this case, the fact that the jailer where plaintiff was incarcerated failed to deliver her green card to her nominee did not in any way deprive her of her status as one entitled to medical assistance under the Illinois Public Aid Code, and the rules and regulations of the Department of Public Aid. Although the jailer could impound the green card, he could not impound the entitlement to medical assistance. Other means and methods of establishing entitlement to medical

services for plaintiff's minor child were readily available to the plaintiff or to anyone who had the custody of her child.

Since plaintiff's medical eligibility card does not constitute goods or any type of personal property that could be the subject of a bailment, we find that the trial court was correct in dismissing plaintiff's complaint for failure to state a cause of action and, for the same reasons, count II of plaintiff's complaint sounding in conversion was also insufficient to state a cause of action.

Affirmed.

KARNS and HARRISON, JJ., concur.