MARVIN MUELLER *et al.*, Plaintiffs-Appellees, v. EDWARD SOFFER *et al.*, Defendants-Appellants.

Fifth District   No. 5—86—0185

Opinion filed September 23, 1987.

Rice Law Offices, of Belleville (Philip R. Rice, of counsel), for appellants.

Eric M. Rhein, of Kuehn & Rhein, of Belleville, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendants, Edward Soffer and Larry Soffer, have perfected this appeal from an order of the circuit court of St. Clair County which entered judgment after a bench trial in favor of plaintiffs, Marvin Mueller and Vin-Mar Supply, Inc., and against defendants in the amount of $10,760 plus costs.

On April 11, 1985, plaintiffs filed a one-count complaint against defendants, alleging as follows: paragraph 1 alleged that prior to August 31, 1984, plaintiff delivered 1,034 railroad carts to defendants' warehouse for storage and safekeeping; paragraph 2 alleged that defendants had a duty to exercise ordinary care in regard to the storage and safekeeping of plaintiffs' property; paragraph 3 alleged that on August 31, 1984, a fire destroyed defendants' warehouse, including all of plaintiffs' carts, and that after the fire plaintiffs' carts had a salvage value of $9,409; and paragraph 4 alleged that on September 7, 1984, defendants carelessly and negligently instructed and allowed L.T.D. Contractors to remove plaintiffs' carts from defendants' property to plaintiffs' damage in the amount of $9,409. Before trial plaintiffs amended the prayer for relief to request $10,000 in damages.

In their answer, defendants admitted the allegations of the first and second paragraphs of the complaint but denied generally the allegations of the third and fourth paragraphs.

After a bench trial on November 26, 1985, the circuit court entered judgment in favor of plaintiffs in the amount of $10,760, plus costs. The court found that plaintiffs established a *prima facie* case of bailment and that defendants offered no evidence of their freedom from negligence. The parties have not raised any issue regarding the specific identities of either the plaintiffs or the defendants; therefore, we will refer to plaintiffs and defendants in the plural.

On appeal defendants contend: (1) that the plaintiffs failed to meet their burden of proving that defendants were negligent in fail-

ing to return the carts; (2) that the circuit court erred in finding that defendants offered no evidence of their freedom from negligence; (3) that the circuit court erred in failing to find that plaintiffs were contributorily negligent; and (4) that plaintiffs failed to prove damages to a reasonable degree of certainty.

The relevant facts are as follows: Marvin Mueller, president of Vin-Mar Supply, Inc., testified that in May 1984 he purchased 1,126 luggage carts, plus approximately two dozen broken carts, from Missouri Pacific Railroad for $7,500. Plaintiffs' exhibit No. 1 was an advertising flyer which Mueller prepared for use in marketing the carts. The flyer included a drawing of a cart, which appears to be similar to those typically used to move baggage, and stated it was a "heavy duty industrial cart," capacity 4,000 pounds, and was constructed of a steel frame and a solid oak bed. The carts were offered for sale for "$45.00 to $125.00 [each] depending on quantity and condition." Mueller testified that a cart weighed on the average 400 to 500 pounds. Mueller stated that he contacted Larry Soffer and made verbal arrangements to store the carts, for a fee, in defendants' warehouse, the old Dixie Mills Feed complex in East St. Louis. Mueller testified that he subsequently sold 50 of the carts, leaving "approximately a thousand."

On or about August 31, 1984, a fire destroyed defendants' warehouse. No evidence was presented as to the fire's nature, origin or cause. The entire building, part of which was six stories high, had collapsed into the basement. Edward Soffer, the owner of the warehouse, testifying as an adverse witness for plaintiff, stated that he saw the warehouse the day after the fire and it was "a gnarled up mess." The carts had been stored on the first floor, stacked on top of one another, three or four deep. Edward Soffer testified that he "didn't see anything that was recognizable." Due to pressure from the East St. Louis building commissioner, who insisted that the building debris be cleaned up immediately, Soffer promptly hired Charles Powell of L.T.D. Contractors (LTD), who began salvage work the second day after the fire. Soffer testified that he did not know anything about salvage value and that he did not give specific instructions to LTD concerning the cleanup. However, Soffer did identify a document which he signed at LTD's request, addressed "To Whom It May Concern," and which purported to give Edward Soffer's permission for LTD to remove salvage from the Old Dixie Feed Mill.

Mueller testified that he visited the scene one or two days after the fire, on a Saturday morning. He stated that the carts were "strewn around." Mueller took photos of the site, and the metal

frame of one of the carts is clearly identifiable. Mueller further testified that he subsequently sent a letter to the Soffers and called Larry Soffer on the phone demanding return of the carts but that the carts were not returned and he was not paid for them. On cross-examination, Mueller testified that he met Charles Powell at the site that Saturday morning and that Powell and four or five men were salvaging bricks from the rubble. Mueller admitted that he did not instruct Powell not to touch any railroad carts. Mueller also testified further concerning his Saturday evening telephone call to Larry Soffer, stating that he confirmed that there had been a fire and that Soffer had said he was sorry. There was no other "major conversation." Mueller identified the letter sent to Larry Soffer, a "night letter" sent via Western Union. The telegram is dated September 14, 1984, demands return of all carts "in a salvage condition" and warns not to remove the carts from the property. Mueller estimated that it would have cost him $10,000 to remove his salvageable property from the rubble.

Joseph Bozada, of D & J Equipment Company, testified that he is in the business of heavy hauling, plant dismantling and buying and selling scrap materials. In spring 1984 Bozada hauled 1,126 freight carts, including good and bad carts, to defendants' warehouse, for which he was paid $6,250. He testified that he was at the scene of the fire when the fire was still smoldering. Bozada stated that the remains of the carts would be considered scrap materials. Bozada also testified that the market price for such scrap varied from $80 to $100 per ton and that "at the time like I told Mr. Vin-Mar you'd probably get a hundred dollars a ton." On cross-examination Bozada testified that he couldn't tell how many carts were in the rubble. He also testified that the carts were made of cast iron, wood and rubber and, while steel will melt and twist, cast iron would not melt in a fire.

Defendants presented the testimony of two witnesses. Edward Soffer testified that there was a large amount of metal in the warehouse, e.g., the warehouse itself was constructed of iron beams and steel reinforced floors, and it contained a steel truck scale and steel storage bins. Soffer testified that after the fire the warehouse was "all mangled up together" and he "couldn't discern anything." Charles Powell charged $3,000 to clean up the debris and Soffer didn't receive any money for any of the debris removed from the site.

Soffer also testified that Mueller called him the day after the fire but did not mention the carts. Soffer identified the telegram sent by Mueller but stated that he received it September 18 with the regular mail. However, there is no stamp or postmark on the envelope. There is some writing on the envelope: "Received 9/18/84." However, it ap-

pears that the date as originally written was 9/13/84. Soffer explained that his secretary noted the date received on his mail in the regular course of business. He testified that he was amazed when he received the letter because "[w]e talked a couple times after the fire, and he never mentioned anything about returning any type of equipment or any salvage operation whatsoever."

On cross-examination, Soffer testified he didn't know how many carts were salvageable, he thought everything had been destroyed, and he made no effort to find out if any of the carts were salvageable.

Charles Powell's agreement to clean up, remove debris and fill in the hole was with Frontier Insurance Company. He testified that part of the warehouse was constructed of steel and tin, and everything was "mangled together." Powell also testified that he saw what was left of the carts that was not deteriorated and mangled and he stated that "there was nothing left of value." The crew used bulldozers to clean up the debris and some steel pieces had to be cut with torches in order to handle them. Fifteen or sixteen brick cleaners cleaned the bricks, knocked the mortar off of them, and stacked them. Powell testified that he saw Mueller on the site on several occasions after the fire. He knew that Mueller had property in the warehouse but Mueller never mentioned the carts to Powell. Although the cleanup operation lasted four or five weeks, Powell was never told by Soffer to "watch out for" plaintiffs' property.

Powell testified that he took the scrap steel to Lifton Iron and Metal and was paid "$3,800 and some odd dollars" for all the salvageable materials, apparently including bricks. Powell stated that he could not distinguish the carts from the structural debris.

Joseph Bozada testified in rebuttal that while he "would take for granted that everything [all the carts] was still there," he could not give an estimate of how many or what percentage of carts were still salvageable after the fire.

Finally, the parties stipulated that the comptroller of Lifton Iron and Metal Company would testify that he received scrap metal from Charles Powell on five occasions, September 12, 13, 14, 20 and 21, 1984, totalling 130,800 pounds, and for which Powell was paid $2,743.67.

The circuit court found that plaintiffs had established a *prima facie* case of bailment; that defendants failed to return the property upon demand; that the defendants offered no evidence of their freedom from negligence; and that the holding of *Cook Electric Co. v. Kolodny* (1971), 1 Ill. App. 3d 181, 273 N.E.2d 674, was applicable. The court accordingly entered judgment in favor of plaintiffs in the

amount of $10,760. Although the court did not explain its computation of damages, it apparently adopted the argument in plaintiffs' supplemental trial memorandum: the weight of the carts (444,000 pounds or 222 tons) multiplied by scrap value of $80 per ton (totalling $17,760) less the cost of salvage ($6,000 to $7,000).

On appeal defendants contend that plaintiffs failed to meet their burden of proving that defendants were negligent in failing to return the carts. Defendants assert that plaintiffs do not claim defendants' negligence caused the fire, that plaintiffs cannot therefore claim recovery for loss of the carts at their prefire value, and that the only issue is their alleged negligence in failing to return the carts in their post-fire condition. We disagree.

■■■ In order properly to plead the existence of and the right to recovery under a bailment theory, the following elements must be alleged: an agreement, express or implied, to create a bailment; delivery of the property in good condition; acceptance of the items bailed by the bailee; and nonreturn or redelivery of the property in a damaged condition. (*Robinson v. St. Clair County* (1986), 144 Ill. App. 3d 118, 120, 493 N.E.2d 1154, 1155.) We conclude that the complaint herein, although inartfully drafted, satisfies these requirements. Defendants have admitted in their answer their duty as bailee to exercise ordinary care in regard to the storage and safekeeping of the carts, as alleged in the complaint. Furthermore, since proof of delivery and nonreturn of bailed goods gives rise to a presumption of negligence on the part of the bailees (*Clark v. Fields* (1967), 37 Ill. 2d 583, 586, 229 N.E.2d 676, 678), we conclude that the complaint raises both the issue of defendants' negligence in allowing the fire to damage plaintiffs' carts and the issue of defendants' negligence in allowing the damaged carts to be removed from the premises without plaintiffs' authority.

We note that defendants cannot claim surprise as to the former issue, inasmuch as plaintiffs' counsel, in his opening statement to the court before trial, explained plaintiffs' theory of the case as follows: "[t]his case is about whether or not the defendants *** owe the plaintiff anything because they failed to return the carts which my client had given them custody of and had paid them money to store in that building." In addition, after the plaintiffs rested their case and defendants moved for a directed verdict, plaintiffs' counsel argued explicitly that delivery, demand and nonreturn raises a presumption of negligence, citing *Clark v. Fields*. Defendants did not move for a continuance, nor did they object or respond to the plaintiffs' argument.

■■ At trial, plaintiffs established an agreement between plaintiffs

and defendants, the delivery of the carts to defendants' warehouse, and the nonreturn of the carts. Therefore, plaintiffs established a prima facie case and raised a presumption of defendants' negligence. *Wright v. Autohaus Fortense, Inc.* (1984), 129 Ill. App. 3d 422, 425, 472 N.E.2d 593, 595.

■ Defendants also contend that the trial court erred in finding that defendants offered no evidence of their freedom from negligence. There is no evidence in the record on appeal concerning the nature, origin or cause of the fire. Instead, defendants contend that "[i]n light of the destruction and the need to act quickly" and "the absence of any mention of carts by Mueller until September 18—these facts sustain the proposition that defendants offered at least some evidence of their freedom of negligence."

We conclude that this evidence does not rebut the presumption of negligence. Defendants, as bailees, were under a duty to exercise reasonable care under the circumstances. (*Wright v. Autohaus Fortense, Inc.* (1984), 129 Ill. App. 3d 422, 426, 472 N.E.2d 593, 596.) In the case at bar, Edward Soffer testified that no effort was made to determine whether plaintiffs' property was salvageable, yet he authorized Powell and LTD to remove all the debris without seeking plaintiffs' authority or permission and without accounting to plaintiffs for the scrap value of the carts. We note that Powell received cash for some of the scrap from the site on September 20 and 21, 1984, *i.e.*, after Soffer received Mueller's demand letter. A bailee is not excused from failing to exercise ordinary care because the bailee would have been equally careless with his own property. (129 Ill. App. 3d 422, 426, 472 N.E.2d 593, 596.) Furthermore, in the face of the evidence presented by plaintiffs, defendants failed to present any evidence to rebut the presumption that the fire which resulted in the destruction of plaintiffs' property was a result of defendants' negligence. See *Cook Electric Co. v. Kolodny* (1971), 1 Ill. App. 3d 181, 184, 273 N.E.2d 674, 676.

■ Defendants' next contention is that the trial court erred in failing to find that plaintiffs were contributorily negligent. Plaintiffs respond that their own negligence was not at issue because defendants failed to raise the defense of comparative negligence in their answer. However, even if defendants had not properly raised the issue of comparative negligence in their answer (see Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d), as amended by Pub. Act 84—624, eff. Sept. 20, 1985), plaintiffs did not object to the introduction of evidence on such issue; and where a party fails to object to evidence offered by an adverse party, an objection that a certain matter is not in issue under

the pleadings is waived. (*Beck v. Capitol Life Insurance Co.* (1977), 48 Ill. App. 3d 937, 942, 363 N.E.2d 170, 173-74.) Plaintiffs' motion after trial to have evidence of alleged comparative negligence stricken did not preserve the objection.

Nevertheless, we have found no Illinois case which applies comparative negligence principles to a bailment situation. In any event, we conclude that the evidence at trial does not support a finding of negligence on plaintiffs' part. Defendants contend that Mueller was contributorily negligent because he visited the site soon after the fire and observed the clean-up operation in progress yet made no mention of salvaging plaintiffs' carts until the night letter was sent more than two weeks after the fire. However, plaintiffs' property had been totally destroyed. Further, defendants have cited no authority to suggest that plaintiffs had any duty to mention salvaging the carts. Instead, it appears that it was entirely reasonable for Mueller to expect that Powell would take as much care to salvage the carts as he did to salvage the bricks.

■■ ■ Defendants' final contention is that plaintiffs failed to prove damages to a reasonable degree of certainty. The circuit court awarded plaintiffs $10,760, apparently adopting an argument made by plaintiffs in their supplemental trial brief: the weight of the carts (444,000 pounds or 222 tons) multiplied by a scrap value of $80 per ton (totalling $17,600) less the cost of salvage ($6,000 to $7,000). However, there is no evidence of how much the carts weighed after the fire. The carts had been constructed of a frame of steel or cast iron but also included a solid oak bed and rubber wheels. We note further that the only evidence of the cost of salvage for plaintiffs was Mueller's testimony that it would have cost plaintiffs $10,000 if Mueller salvaged the carts himself. It was plaintiffs' burden to establish a reasonable basis for computation of damages and damages cannot be awarded on the basis of conjecture or speculation. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36, 42.) We conclude there was insufficient evidence to support an award of damages based on the post-fire scrap value of the carts. Plaintiffs conceded at oral argument that their damages cannot exceed $7,500, the purchase price of the carts. We therefore vacate the circuit court's award of damages.

Since the carts were effectively destroyed, plaintiffs' damages may be measured by the value of the carts at the time of their destruction. (*New York, Chicago & St. Louis R.R. Co. v. American Transit Lines, Inc.* (1951), 408 Ill. 336, 339, 97 N.E.2d 264, 266.) The purchase price of the carts may be considered as a basis for valuation.

(*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 936, 419 N.E.2d 578, 595.) However, there is conflicting evidence on this issue. The complaint alleged that plaintiffs delivered 1,034 carts to defendants, and the defendants' answer admitted that allegation. Yet, at trial, Mueller testified that he paid $7,500 for "all of the carts," being 1,126 plus about 24 broken ones, and he also testified that he had sold 50 of the carts, leaving "approximately a thousand." Joe Bozada testified that he hauled 1,126 carts total to defendants' warehouse. Since there is conflicting evidence as to the number of carts lost, we remand for a hearing limited to the issue of plaintiffs' damages.

For the foregoing reasons, the judgment of the circuit court of St. Clair County as to liability is affirmed, the award of damages is vacated, and this cause is remanded for a hearing on the issue of damages.

Affirmed in part, vacated in part and remanded.

KARNS, P.J., and LEWIS,* J., concur.

---

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.