JOLE LIDDLE, Plaintiff-Appellant, v. SALEM SCHOOL DISTRICT No. 600, Defendant-Appellee.

Fifth District   No. 5—92—0419

Opinion filed August 26, 1993.—Rehearing denied September 28, 1993.

Harold K. Pike III, of Centralia, for appellant.

Raymond A. Hauser and Jon G. Crawford, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago, for appellee.

JUSTICE MAAG delivered the opinion of the court:

This case arises from an alleged failure on the part of Salem School District 600 to deliver a letter to the plaintiff, Jole Liddle, in a timely fashion. For reasons explained later in this opinion, we will only describe those facts alleged in the plaintiff's complaint.

On June 27, 1991, Jole Liddle filed a complaint against Salem School District 600. In his complaint he claimed that during the academic year 1990-91 he was enrolled as a student in the Salem School District 600 and was also a member of the men's varsity basketball team. He hoped to attend college following his high school graduation.

According to the complaint, Monmouth College of West Long Branch, New Jersey, mailed a letter to Liddle on July 18, 1990. The letter was addressed to Liddle, in care of the men's basketball coach at Salem High School. Liddle claimed that the high school had a policy of delivering mail to students addressed to them in care of the school. However, the letter was not delivered to Liddle for seven months despite the fact that the letter was received by the school district shortly after it was mailed. According to the complaint, the letter contained a notification to Liddle that he was being recruited for a basketball scholarship by the college. Liddle claims that because of the tardy delivery of the letter to him, he did not seasonably learn of these recruitment efforts and as a result the college discontinued its recruitment efforts. He, therefore, sought damages equal to the value of a four-year scholarship at Monmouth.

The school district filed a motion to dismiss or in the alternative for summary judgment. The motion to dismiss stated that it was filed pursuant to section 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—619). However, the motion did not raise any of the grounds for dismissal set out in that section. Rather, it sought dismissal on the basis of a claimed failure to state a cause of action. As such, the motion was in fact a section 2—615 motion. Ill. Rev. Stat. 1991, ch. 110, par. 2—615.

The parties each filed lengthy memoranda, affidavits, and other materials in support of and in opposition to the motions. The parties and the court treated the complaint as an attempt to plead a bailment cause of action with respect to the letter.

The school district argued in the motion to dismiss that the letter was not property capable of being the subject of a bailment. It also

claimed that insufficient facts had been pleaded to show a causal relationship between the tardy delivery and the alleged loss of the scholarship.

Liddle responded by arguing that the *information* in the letter was the subject of the bailment and that this information was property and properly the subject of a bailment action. He also argued that sufficient facts were pleaded to show causation.

The circuit court, relying on our opinion in *Robinson v. St. Clair County* (1986), 144 Ill. App. 3d 118, 493 N.E.2d 1154, ruled that the letter was not bailable property and, therefore, dismissed the complaint with prejudice. The court expressly stated that the motion was not being granted on causation grounds. It is apparent from the order that the motion was granted due to a perceived failure of the complaint to state a cause of action. There is no indication that the summary judgment motion formed a basis for the dismissal.

As we stated earlier, despite the fact that the motion to dismiss was labeled as a section 2—619 motion, in fact, the averments of the motion and the grounds pleaded were indicative of a section 2—615 motion. We will not lengthen this opinion by again distinguishing these sections. Counsel are urged to read *Barber-Colman Co. v. A & K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 603 N.E.2d 1215, for a detailed discussion of the differences. It is enough to state that since the motion to dismiss was akin to a section 2—615 motion, we must accept as true the well-pleaded facts of the complaint and may not consider facts outside the four corners of the complaint. Accordingly, we have set forth only the facts as alleged in the complaint.

The sole issue raised on appeal is: Does the information contained in the letter from Monmouth College constitute property that is properly the subject of a bailment? We answer this question in the affirmative.

A bailment occurs when goods, or other personal property, are delivered to another, who under contract either express or implied has agreed to accept delivery and deal with the property in a particular way. Once the purpose of the bailment has been fulfilled, the bailee, pursuant to the contract, must return the property to the bailor or otherwise deal with the property as contemplated by the contract or as directed by the bailor. (4A Ill. L. & Prac. *Bailments* §2, at 498 (1971); *Interlake, Inc. v. Kansas Power & Light Co.* (1979), 79 Ill. App. 3d 679, 398 N.E.2d 945.) Both tangible and intangible property may be the subject of a bailment. (*Robinson*, 144 Ill. App. 3d at 120, 493 N.E.2d at 1155.) A plaintiff seeking to plead a bailment cause of

action has the option of proceeding in tort or contract. *Robinson*, 144 Ill. App. 3d at 121, 493 N.E.2d at 1156; *Baren v. Cain* (1884), 15 Ill. App. 387.

■■ The elements of a cause of action premised on a bailment theory are:

(1) An agreement, express or implied, to create a bailment;

(2) Delivery of the property to the bailee in good condition;

(3) Acceptance of the bailed property by the bailee; and

(4) Failure by the bailee to redeliver the property or deal with it according to the terms of the bailment contract.

*Wright v. Autohaus Fortense, Inc.* (1984), 129 Ill. App. 3d 422, 425, 472 N.E.2d 593; 4A Ill. L. & Prac. *Bailments* §6, at 507-08 (1971).

The circuit court in dismissing the plaintiff's complaint relied upon our decision in *Robinson v. St. Clair County* and held that the letter from Monmouth College was not bailable property. In *Robinson* we held that an AFDC (Aid to Families with Dependent Children) medical card was not bailable property since the card was merely symbolic of a status, did not constitute property, and did not entitle anyone to property. (*Robinson*, 144 Ill. App. 3d at 122, 493 N.E.2d at 1156.) We believe that the facts of this case are readily distinguishable.

While the AFDC card in *Robinson* contained information necessary to process an application for medical benefits, the wrongful retention, loss, or destruction of the card could not deprive the holder of access to those benefits. As stated in *Robinson*, if the card is lost, "it is common practice to call the local Illinois Public Aid office to determine whether entitlement to medical assistance has been established." (*Robinson*, 144 Ill. App. 3d at 122, 493 N.E.2d at 1157.) The plaintiff in *Robinson* already knew she was entitled to benefits. Withholding the medical card did not deprive the plaintiff of information needed for benefits, nor did it deprive her of those benefits.

In the instant case, Liddle claims that because he did not learn of the Monmouth College recruitment efforts for seven months, he was deprived of the opportunity to compete for a scholarship. Unlike *Robinson*, where the plaintiff already knew her AFDC status, Liddle did not know of his status as a person being considered for a scholarship. Thus, it is this information that is claimed to constitute the property that was the subject of the bailment.

■■ Our supreme court has recognized that information may constitute intangible personal property. (*First National Bank v. Department of Revenue* (1981), 85 Ill. 2d 84, 421 N.E.2d 175.) In that case, the court was required to determine with respect to computer software whether, under the Illinois Use Tax Act (Ill. Rev. Stat. 1977, ch.

120, pars. 439 through 439.22), the sale of that software was a transfer of tangible or intangible property. The court concluded that the information on the tapes was the substance of the transaction and not the tapes themselves. Therefore, the information was deemed to be intangible personal property. *Department of Revenue*, 85 Ill. 2d at 91, 421 N.E.2d at 179.

Information may, under certain circumstances, be a valuable commodity. If a person learns that the price of a stock is going to increase the following day and purchases shares prior to the rise, that information absolutely has value. Each of the parties to this case is undoubtedly paying the attorneys representing it for legal advice. We doubt that these attorneys would claim their advice was valueless.

There are numerous older decisions in this State which recognize that the nondelivery or late delivery of a telegram may result in liability. See *Pfiester v. Western Union Telegraph Co.* (1917), 282 Ill. 69, 118 N.E. 407 (telegraph company's failure to deliver message offering personal-service contract playing baseball resulted in liability for damages); *Providence-Washington Insurance Co. v. Western Union Telegraph Co.* (1910), 247 Ill. 84, 93 N.E. 134 (telegraph company's misdelivery of a telegram resulting in insurance policy not being cancelled will support judgment against the telegraph company); *Western Union Telegraph Co. v. North Packing & Provision Co.* (1900), 188 Ill. 366, 58 N.E. 958 (tardy delivery of telegram dealing with the purchase of hogs resulted in liability on the part of the telegraph company).

In some of the examples referenced above, the information had value to only one person or entity. In the case of the personal-service contract for playing baseball (*Pfeister*), the offer had no value to anyone other than the plaintiff, the offer was not assignable since it was a personal-service contract, and the paper it was written on had no real value. The information in the telegram had great value to Mr. Pfeister.

Similarly, in this case, the letter and information it contained was only valuable to Mr. Liddle. He could not assign or sell that information, but the information still had value to him.

We have considered the case of *Brands v. Sheldon Community School* (N.D. Iowa 1987), 671 F. Supp. 627, which is relied upon by the school district. In that case, a talented high school athlete hoped to receive a scholarship after graduation. Because of a disciplinary incident he was suspended from participation in athletics. The student sought injunctive relief, arguing that the suspension would harm his chances for a scholarship. In refusing the requested relief, the district court ruled that the student had neither an entitlement to nor a prop-

erty interest in an unawarded scholarship. We consider the case to be distinguishable. In *Brands* the student had a mere hope or expectancy of receiving a scholarship. He was never actually recruited, and he did not have a property interest in a scholarship. In the instant case, Liddle had a property interest in the information contained in the Monmouth letter.

■ We believe that the information allegedly contained in the letter mailed by Monmouth College to Liddle constituted intangible personal property. We further conclude that information of the type allegedly contained in the letter is bailable property. For this reason, the order of the circuit court of Marion County must be reversed.

We must state, however, that important factual issues remain. It is possible that even if the letter had been promptly delivered to Liddle he still would not have received a scholarship. An element that must be proven by a preponderance of the evidence is that he would have received a scholarship but for the late delivery.

We also recognize that school districts may receive large amounts of mail addressed to their students and that a late delivery or nondelivery of that mail could be detrimental to the student. Simply because an opportunity is lost due to nondelivery or late delivery of mail, the school district should not be liable for all damages suffered. An important element that must be proven is that the district had notice, actual or constructive, of the type or importance of the information contained in the letter. This does not mean that the district must know precisely, in detail, the subject of the correspondence.

■ If a reasonable person would know or should know that the letter related to an important transaction, then liability may attach for the failure to deliver in a timely fashion (*Providence-Washington Insurance Co.*, 247 Ill. at 90, 93 N.E. at 136). Among the factors to consider in resolving this factual issue are:

(1) The circumstances surrounding the receipt of the letter by the school district, *e.g.*, have colleges in the past sent recruiting letters to students in care of the school;

(2) What policy or custom, if any, exists with regard to colleges corresponding with students through coaches or school districts; and

(3) Any other knowledge possessed by the district or its agents that would lead a reasonable person to conclude that the letter related to an important transaction.

This list is by no means all inclusive. Whether the letter should have been recognized as important correspondence is a matter to be determined by the finder of fact.

774

Accordingly, the judgment of the circuit court of Marion County is reversed, and the cause is remanded.

Reversed and remanded.

CHAPMAN, P.J., and GOLDENHERSH, J., concur.