OPINION
Safelite Glass Corporation ("Safelite"), plaintiff-appellant, appeals a judgment of the Franklin County Court of Common Pleas granting a motion for summary judgment and a motion to dismiss filed by defendants-appellees, Clara Kagy, Terri Kagy, and Auto Glass R US, Inc. ("Auto Glass").
In mid-1995, Clara Kagy and Terri Kagy worked for an auto glass company and signed employment agreements pursuant to their employment. The agreements designated US Auto Glass Centers, Inc. ("USAG") as the appellees' "employer." At the time the appellees signed the agreements, USAG was a wholly owned subsidiary of Globe Glass Mirror Co. ("Globe"). The agreements included a restrictive covenant prohibiting the employees from "directly or indirectly, as an owner, shareholder partner, or employee, engag[ing] in the Area in the * * * auto glass or auto trim business" for one year after termination of their employment. The employment agreements also contained a choice of law provision indicating that they were to be construed under Illinois law.
In March 1996, Globe merged with Windshields America, Inc. and changed its name to Vistar, Inc. On December 18, 1997, Vistar and Safelite merged, with Safelite being the surviving corporation. The appellees resigned from Safelite in June 1998 and formed Auto Glass, a corporation that also engaged in the auto glass industry.
On July 9, 1998, USAG filed a complaint against appellees. The complaint stated causes of action for breach of the employment agreements and tortious interference. Each cause of action alleged that appellees' actions caused Safelite to suffer damages but did not allege any damages on behalf of USAG. Also on July 9, 1998, USAG filed a motion for a temporary restraining order, which specifically alleged irreparable harm to USAG while not alleging any harm to Safelite. The trial court granted the motion and issued a temporary restraining order on July 10, 1998. On July 16, 1998, appellees moved to dissolve the restraining order, which the trial court granted. On July 31, 1998, Safelite moved to intervene as a new-party plaintiff. Also on that date, USAG filed an amended complaint and alleged that harm would occur to Safelite "and/or" its subsidiary USAG.
On August 19, 1998, USAG filed a motion to substitute Safelite as the party plaintiff and for leave to file a second amended complaint naming Safelite as the party plaintiff. On October 13, 1998, USAG merged with and into Safelite. On December 1, 1998, the trial court allowed Safelite ("appellant") to be substituted as the real party interest in place of USAG, and on December 9, 1998, appellant filed a second amended complaint. The second amended complaint asserted that appellant held the employment agreements by assignment and requested injunctive and monetary relief against appellees for breach of the restrictive covenants and breach of the common law duty of loyalty and against Clara Kagy and Auto Glass for tortious interference.
On December 28, 1998, appellees filed a motion to dismiss the second amended complaint. On April 15, 1999, appellees filed a motion for summary judgment. On June 29, 1999, the court filed a judgment granting appellees' motion for summary judgment and motion to dismiss. The trial court found that: (1) appellees were never employed by USAG; (2) the restrictive covenants were not assignable to appellant; (3) appellees had no notice of the assignments; and (4) because the claims for breach of duty of loyalty and tortious interference arose out of the restrictive covenants, which were unenforceable by appellant, appellant could not recover based upon these claims. Appellant appeals the trial court's judgment, and appellees have filed a cross-appeal. Appellant asserts the following assignments of error:
 I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BREACH OF CONTRACT CLAIMS.
 II. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE TORTIOUS INTERFERENCE WITH CONTRACT AND THE BREACH OF DUTY OF LOYALTY CLAIMS, WHICH WERE NOT PROPERLY BEFORE THE COURT.
Appellant asserts in its first assignment of error that the trial court erred in granting appellees' motion for summary judgment and motion to dismiss. We will first address appellees' motion for summary judgment. Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100,103.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio explained the respective burdens of parties when a motion for summary judgment is filed. The Supreme Court stated that the moving party, on the ground the nonmoving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. The moving party cannot discharge its initial burden under the rule with a conclusory assertion that the nonmoving party has no evidence to prove its case. Kulch v.Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 147; Dresher,supra, at 293. Rather, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which affirmatively demonstrate that the nonmoving party has no evidence to support their claims. Civ.R. 56(C); see, also, Dresher, supra, at 293. Once the moving party satisfies its initial burden by affirmatively demonstrating that the nonmoving party lacked the evidence to support its claims, the nonmoving party is required to set forth specific facts showing that there is indeed a genuine issue. Id. at 293. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Chaney v. Clark Cty. Agricultural Soc., Inc.
(1993), 90 Ohio App.3d 421, 424.
Appellant asserts that genuine issues of material fact remain as to the identity of appellees' employer and whether appellees acquiesced to the assignment of their employment contracts. We will first address whether appellees acquiesced to the assignment of their employment agreements because our determination of this issue renders the identification of appellees' employer moot. Appellant asserts that there was a genuine issue of material fact as to whether appellees acquiesced to the assignment of their employment contracts and that the trial court improperly construed evidence most strongly in favor of appellees. Appellees contend that appellant failed to satisfy its burden to present specific facts demonstrating that there remains a genuine issue regarding appellees' acquiescence to the assignment. Because the employment contracts contained a choice of law clause, we must determine this issue pursuant to Illinois law.
Some contract rights are so personal to the assignor that they are not assignable. See Soderberg v. Gens (N.D.Ill. 1987), 652 F. Supp. 560, 566. Such contracts are referred to as personal service contracts. Ames v. Sayler (1994), 267 Ill. App.3d 672. Although personal service contracts are generally not assignable, it is well established under Illinois law that a personal service contract may be assigned with the consent of both parties. See id. at 674; Liddle v. Salem School District No. 600
(1993), 249 Ill. App.3d 768, 772, citing Pfiester v. Western UnionTelegraph Co. (1917), 282 Ill. 69.
It is clear that the employment contracts in the present case were personal service contracts. Where the "personal acts and qualities of one of the parties form a material and ingredient part of the contract," the contract is a personal service contract. Ginsburg v. Bull Dog Auto Fire Ins. Ass'n of Chicago
(1928), 328 Ill. 571, 572-573. The personal acts and qualities of the appellees in the current case formed a material part of the employment contracts and covenants not to compete, and, thus, the contracts were personal service contracts. See Martin v. City ofO'Fallon (1996), 283 Ill. App.3d 830. Other courts have also held that covenants not to compete are of a personal nature and considered personal service contracts. See SDL Enterprises, Inc.v. DeReamer, (Ind.Ct.App. 1997), 683 N.E.2d 1347, 1349, citingJones v. Servel, Inc. (1962), 135 Ind. App. 171, 181. Thus, because the employment contracts in the present case are personal service contracts, they could have only been assigned to appellant if appellees acquiesced and consented to the assignment. See FirstIllinois National Bank v. Knapp (1993), 246 Ill. App.3d 152, 155;Liddle, supra; Ames, supra. Therefore, we must determine whether there is a genuine issue of material fact as to whether appellees acquiesced and consented to the assignment of the employment contracts and covenants not to compete.
Pursuant to the standard set forth in Dresher, supra, appellees, as the moving party, had the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. In their motion for summary judgment, appellees cite several grounds in support of summary judgment. Appellees first point out that there was never any intention expressed between the parties, either written or orally, indicating that the employment contracts were assignable. When construing a contract, the court's primary objective is to ascertain and give effect to the intention of the parties, including the language used in the agreement. City of O'Fallon,supra; In re Doyle (1991), 144 Ill.2d 451, 468. A review of the contracts in the present case reveals no provision for the assignability of the contracts. Further, there is nothing to indicate that the parties discussed assignability at the time they executed the contracts, during the remainder of appellees' employment, or at the time of appellees' terminations. Appellees were not informed of the alleged assignability of the contracts or the actual assignment of the contract to appellant until the present action was initiated. Pursuant to Dresher, appellant had the reciprocal burden to present specific facts demonstrating that a genuine issue of material fact existed; however, appellant failed to present any contrary evidence demonstrating the intention of the parties.
Appellees relied in part upon three affidavits to support their motion for summary judgment, in which they asserted that they did not acquiesce to the assignment of their employment contracts. Appellees averred in separate affidavits that they were never advised that the covenants not to compete could be assigned to another entity. They both also stated that had they known that the promise not to compete could have been assigned or enforced by a successor business, they would have refused to enter into the covenants not to compete. Appellees also relied upon the affidavit of David Wood, the vice president and general counsel of Safelite. Wood averred that there was a resolution in the USAG corporate minute book authorizing the USAG assignment on December 11, 1997, but that he was unaware of the USAG assignment until August 3, 1998, two months after appellees left their employment. He stated that until August 3, 1998, he believed that USAG was the proper party to enforce appellees' employment agreements.
Appellant argues that the trial court improperly drew two inferences in favor of appellees regarding these three affidavits. Appellant asserts that inferring that appellees did not acquiesce in the assignment because there was evidence that Wood did not know of the assignment construes the evidence in favor of the moving party. Appellant also contends that inferring that there was no acquiescence because appellees would not have signed the employment agreements in 1995 if they had known that the covenants could be assigned, also improperly construes evidence in favor of appellees. Appellant points out that appellees' state of mind in 1995 does not eliminate the possibility that a reasonable jury could find that they later acquiesced in an assignment.
However, notwithstanding appellant's argument regarding these two inferences, appellant does not present any argument regarding the most telling evidence presented by appellees in their affidavits regarding their lack of acquiescence. It is undisputed that appellees were never told that the employment contracts and covenants not to compete could be assigned. More importantly, appellees had no knowledge that the covenants were, in fact, assigned. Nothing is more indicative of their lack of acquiescence than the fact that they at no time manifested any intent to acquiesce to the assignment.
In an attempt to show that appellees acquiesced to the assignment of the covenants not to compete, appellant relies solely upon appellees' continued employment with each corporation. To support this contention, appellant cites Norlund v. Faust
(Ind.Ct.App. 1997), 675 N.E.2d 1142, in both its memorandum contra appellees' motion for summary judgment and its appellate brief. However, because Norlund is an Indiana Court of Appeals case, it is not controlling in determining cases under Illinois law and may be only used as persuasive authority. See People ex rel. Watson v.Spinka (1978), 58 Ill. App.3d 729, 734. In Norlund, the Indiana Court of Appeals enforced a covenant not to compete that an optometrist signed while he worked for an ophthalmologist. The ophthalmologist later incorporated from a sole proprietorship, and the optometrist continued to work for the new corporation. The court of appeals found that the optometrist impliedly acquiesced to the assignment of his covenant not to compete because he continued to work for the new entity, doing the same job, and accepting the same salary and benefits of his agreement without any objection.
However, in relying on Norlund, appellant fails to note the full analysis of the Indiana Court of Appeals. After finding that continued employment could impliedly demonstrate acquiescence to the assignment of the covenant not to compete, the court inNorlund also found that continued employment alone was insufficient to constitute consent to the assignment of an employment contract. Relying upon a Florida Court of Appeals case, Johnston v. Dockside Fueling of N.Am. (1995) Fla.,658 So.2d 618, the court in Norlund stated:
 In so far as the Florida court observed that continued employment alone will not constitute consent to the assignment of a personal services contract, we agree. The parties must have knowledge of the assignment in order to consent to it. Parties have the right to determine with whom they contract. * * * If an employee can be said to consent to the assignment of his contract without knowledge of that assignment, it defeats the aforementioned right. If however, the employee is aware of the assignment and continues his employment knowingly, he may not thereafter successfully claim that he opposes said assignment. In the present case, there is evidence of record that R. Norlund had knowledge of the assignment between Faust Eye Center and Faust Eye Center, P.C. Norlund, supra, at 1152-1153.
Unlike Norlund, in the present case, there was no evidence that appellees knew of the assignment. Appellees averred that they were never notified that the employment contracts had been assigned and were first informed of the assignment only after the instant action was filed. Appellant presented no evidence to the contrary. Because the facts in the present case fail to satisfy the requirement set forth in Norlund that the employee must have knowledge of the assignment in order to acquiesce via continued employment, we find Norlund unpersuasive and the appellees' continued employment not determinative of this issue.
However, we do find another recent Indiana Court of Appeals case compelling and factually similar to the present case. In SDL Enterprises, supra, Sharon DeReamer hired Sonya Clark to work for her travel agency, Dream World Travel, Inc. Clark executed a covenant not to compete with Dream World for one year following the termination of her employment. DeReamer then arranged to sell Dream World to J. L. Grimm, Inc. ("Grimm"). DeReamer signed a covenant not to compete in which she agreed not to compete with Grimm. After Grimm purchased Dream World, Clark continued to work for the travel agency. Grimm later arranged to sell Dream World to SDL Enterprises, Inc. ("SDL"). Grimm and SDL executed a contract in which SDL purchased Dream World's assets. In addition, Grimm assigned to SDL the covenants not to compete signed by DeReamer and Clark. Thereafter, SDL operated the business as "Travel Center" and continued to employ Clark at the travel agency. Clark then resigned from the Travel Center and accepted employment at Carefree, another travel agency. Later, DeReamer also accepted employment at Carefree. After SDL filed a complaint against DeReamer and Clark to enforce the covenants not to compete, the trial court granted summary judgment to DeReamer and Clark. The court of appeals upheld the trial court, finding that
 SDL does not contend, and the record does not indicate, that DeReamer and Clark ever consented to Grimm's assignment of their covenants to SDL. As such, the assignment of the covenants is not valid. * * * Therefore, SDL, as the assignee, had no right to enforce these covenants as a matter of law. SDL Enterprises, supra, at 1350.
Although the court in SDL Enterprises cited Norlund for the general proposition that a covenantor may acquiesce and consent to the assignment of a covenant, it did not follow the holding in Norlund that continued employment under succeeding entities was a factor in determining acquiescence to assignment. The court in SDL Enterprises did not mention Clark's continued employment under the successor entities in its analysis of whether Clark acquiesced to the assignment of the covenant not to compete to the later corporation. Rather, the court in SDL Enterprises
found that without some manifestation of consent to the assignment, a successor corporation might not enforce a covenant not to compete.
In the present case, as in SDL Enterprises, appellees worked for several corporations as the result of acquisitions and mergers. Further, as in SDL Enterprises, appellees at no time manifested any knowledge of the assignment or any acquiescence to the assignment. Appellant has failed to satisfy its reciprocal burden pursuant to Dresher, supra, that appellees had any knowledge of the assignment or acquiesced to the assignment. Therefore, for the preceding reasons, we find that even construing the evidence most strongly in appellant's favor, there is no genuine issue of material fact and reasonable minds can only come to the conclusion that appellees failed to acquiesce to the assignment of their employment contracts and the covenants not to compete. Because we have found that the appellees did not acquiesce to the assignment of the covenants not to compete, the other arguments under the first assignment of error are moot. See App.R. 12(A)(1)(c). Therefore, appellant's first assignment of error is overruled.
Appellant argues in its second assignment of error that the trial court erred when it granted appellees' motion for summary judgment with respect to the claims for tortious interference with a contract and breach of the duty of loyalty because they were not properly before the court. Appellant concedes that if the employment agreements are unenforceable, its claim for tortious interference is no longer viable. Thus, because we have found in the first assignment of error that there was no valid assignment of the employment agreements, appellant's argument with respect to tortious interference must fail.
With regard to the claim for breach of duty of loyalty, we first note that in its merit brief, appellant asserts only that the claim was not properly before the court because it was not raised in appellees' motion for summary judgment. Appellant does not argue the merits of the trial court's ruling on this issue and does not present any legal basis or case law in this regard in its merit brief. The issue with regard to the merits was raised for the first time by appellees in their brief. Therefore, we find that the argument with respect to the merits of the motion for summary judgment on the breach of loyalty claim are not properly before us and will not be considered. See App.R. 16(C); Sheppardv. Mack (1980), 68 Ohio App.2d 95.
Appellant contends that the claim for breach of loyalty was not before the trial court because it was not properly raised. In appellees' motion for summary judgment, after stating there was no legal basis to enforce the restrictive covenants, appellees stated "there is no legal authority or facts which the Plaintiff can rely upon to claim that the Defendants breached a duty of loyalty to the Plaintiff." Appellees further requested at the conclusion of their motion for summary judgment that the "Court determine those material facts that exist without controversy and * * * determine the material facts that are actually, and in good faith, controverted." In its memorandum contra, appellant asserted that the breach of duty of loyalty issue was not properly raised but then went on to present the relevant facts, pertinent case law, and argument on that issue. In their reply to the memorandum contra, appellees further extrapolated on the argument. We find that appellees sufficiently raised the breach of loyalty issue and that both parties briefed the issue as to not make this a "summary judgment by ambush." See Cincinnati Ins. Co. v.Colelli Assoc., Inc. (June 17, 1998), Wayne App. No. 97CA0042, unreported. We further note that the record does not indicate that appellant ever raised the issue again before the trial court at the time of the hearing on the motion or moved to strike appellees' reply brief, in which appellees more fully enunciated the grounds and legal basis for summary judgment on the breach of loyalty issue. See Collins v. Emro Marketing Co. (May 11, 1999), Franklin App. No. 98AP-1014, unreported.
However, even if, assuming arguendo, appellees did not properly raise the issue in their motion for summary judgment, the trial court properly ruled on the breach of loyalty claim in ruling on appellees' summary judgment motion. Appellant essentially argues that appellees' motion for summary judgment was actually only a motion for partial summary judgment because appellees did not present any evidence of the breach of loyalty claim. In Misrach v. Montgomery (1993), 90 Ohio App.3d 187, the trial court granted summary judgment on all of the issues although the party had moved for partial summary judgment only. The court of appeals determined that the ruling on the motion for partial summary judgment resolved all matters in controversy. Accordingly, the court of appeals in Misrach found that the lower court did not err by disposing of the entire claim on summary judgment. See id.
at 189-190; see, also, JDW, Inc. v. Canfora (May 22, 1996), Summit App. No. 17552, unreported. In the present case, the trial court determined that appellant could not enforce the covenants not to compete. The resolution of the issue regarding the enforceability of the covenants not to compete was also dispositive of the breach of loyalty claim because the breach of loyalty claim was necessarily dependent on the viability of the claim on the covenants not to compete. Therefore, we find that the trial court properly ruled on the breach of loyalty claim, and appellant's second assignment of error is overruled.
Appellees have filed three cross-assignments of error. Appellees argue in their first cross-assignment of error that the trial court abused its discretion in denying their motion to disqualify appellant's attorney, David Levine, and his law firm, Baker Hostetler. On August 7, 1998, appellees filed a motion for Civ.R. 11 sanctions against Levine and David Wood, claiming that Wood and Levine filed misleading pleadings and motions, including the verified complaint. On August 20, 1998, appellant filed a memorandum contra appellees' motion for sanctions. Attached to the memorandum contra was a seven-page affidavit by Levine that detailed the actions he took to determine appellees' employer and the real party in interest. On August 25, 1998, appellees filed a motion for frivolous conduct and Civ.R. 11 sanctions against USAG and Levine. On September 9, 1998, appellees filed a motion to disqualify Levine and Baker 
Hostetler. Appellees contended in their motion to disqualify that Levine had become a significant witness to material facts and issues in dispute due to his filing the affidavit.
On November 19, 1998, the trial court denied appellees' motion to disqualify Levine and Baker Hostetler and held appellees' various motions for sanctions and frivolous conduct in abeyance pending the determination of the underlying action, stating:
 Defendants seek to have Attorney David C. Levine and his firm disqualified pursuant to D.R. 5-102(A). The Court declines to disqualify Mr. Levine or his firm.
D.R. 5-102(A) precludes counsel from being a witness on behalf of his client. Mr. Levine is not a witness to any of the underlying facts in this case. Any possible testimony needed from Mr. Levine would relate to the issue of sanctions which can easily be segregated from the trial on the merits and does not violate D.R. 5-102(A).
The trial court has wide discretion in the consideration of a motion to disqualify counsel. Spivey v. Bender (1991),77 Ohio App.3d 17. When reviewing the disqualification of a party's chosen counsel, we apply an abuse of discretion standard.Centimark Corp. v. Brown Sprinkler Serv., Inc. (1993), 85 Ohio App.3d 485, syllabus; Mentor Lagoons, Inc. v. Rubin (1987), 31 Ohio St.3d 256. "`Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v. River PlaceCommunity Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161. Further, disqualification of an attorney "is a drastic measure which should not be imposed unless absolutely necessary." Spivey, supra, at 22. Even if the requested disqualification is allegedly based on ethical considerations, the party moving for disqualification still bears the burden of demonstrating the need to disqualify counsel.Centimark, supra, at 488-489.
Because we have already overruled appellant's assignments of error, the only pending issues remaining before the trial court are the motions for sanctions, frivolous conduct, and Civ.R. 11 violations. Therefore, it is clear at this point that the only matters Levine would be required to testify to now are those relating to the sanctions and frivolous conduct, not matters involving the only plaintiff in the underlying action, Safelite. Thus, Levine would clearly not be in violation of D.R. 5-102(A), which only precludes counsel from being a witness on behalf of his own client. Further, each of the subjects of the various motions for sanctions and Civ.R. 11 violations are represented by separate counsel for the purposes of the sanctions proceedings. We also note that although appellees argue in their appellate brief that Levine and Baker Hostetler should also be disqualified pursuant to D.R. 5-102(B), appellees did not argue this before the trial court and are, thus, precluded from asserting this assignment of error for the first time on appeal.Niemann v. Cooley (1994), 93 Ohio App.3d 81, 89; Stores Realty Co. v.Cleveland (1975), 41 Ohio St.2d 41. Therefore, the trial court did not abuse its discretion in overruling appellees' motion to disqualify Levine and Baker Hostetler, and appellees' first cross-assignment of error is overruled.
Appellees argue in their second cross-assignment of error that the trial court erred in denying their motion to compel the deposition of Levine. On September 14, 1998, appellees served a notice of video deposition on Levine. Counsel for Levine notified appellees' counsel that he would not be attending the deposition on the basis that he was not a party to the case. On October 8, 1998, appellees moved to compel the deposition of Levine after Levine failed to appear for the noticed deposition. On November 19, 1998, in conjunction with denying appellees' motion to disqualify, the trial court also denied appellees' motion to compel the deposition of Levine, stating:
 Mr. Levine is not a witness to any of the underlying facts in this case. Any possible testimony needed from Mr. Levine would relate to the issue of sanctions which can easily be segregated from the trial on the merits and does not violate D.R. 5-102(A). The pending motion to compel a deposition of David Levine is overruled at this time. This issue can be re-examined at the conclusion of the underlying case.
A trial court's decision on discovery issues is within its broad discretion, and the decision will not be reversed absent an abuse of such discretion. Carpenter v. Reis (1996), 109 Ohio App.3d 499,507; Toney v. Berkemer (1983), 6 Ohio St.3d 455, 458. In the present case, the trial court did not abuse its discretion in overruling appellees' motion to compel Levine's deposition. First, appellees failed to subpoena Levine for the deposition. Civ.R. 30(A) provides that the attendance of a nonparty witness deponent should be compelled by the use of subpoena, as provided by Civ.R. 45. Fletcher v. Bolz (1987), 35 Ohio App.3d 129, 131. The Supreme Court of Ohio has specifically found that it is not an abuse of discretion to deny a motion to compel the deposition of a nonparty when such nonparty is not subpoenaed pursuant to Civ.R. 45. State ex rel. The V. Cos. v. Marshall (1998), 81 Ohio St.3d 467,469. Although appellees contend Levine has somehow become a party to the present proceedings, no case law has been cited to support this position, and we are not persuaded.
Second, the trial court stated that it was overruling the motion to compel "at this time." The court specifically stated that the issue of Levine's deposition could be revisited after the underlying case concluded. The trial court did not state any specific deadline for such revisiting except "at the conclusion of the underlying case." Thus, the trial court has clearly stated that appellees may still pursue this issue. Therefore, we find the trial court did not abuse its discretion in overruling the motion to compel the deposition of Levine, and appellees' second cross-assignment of error is overruled.
Appellees argue in their third cross-assignment of error that the trial court abused its discretion in granting the motion of USAG to substitute Safelite as plaintiff and granting leave to file a second amended complaint. Because we have already overruled appellant's assignments of error, this issue has become moot. See App.R. 12(A)(1)(c). At this stage of the proceedings, any error in granting the motion to substitute and leave to file the second amended complaint would be harmless and nonprejudicial. See Fada v. Information Sys. Networks Corp. (1994), 98 Ohio App.3d 785. Therefore, we overrule appellees' third cross-assignment of error.
For the reasons set forth above, we find that the trial court did not err in granting appellees' motion for summary judgment. Both of appellant's assignments of error and appellees' three cross-assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BOWMAN, P.J., and DESHLER, J., concur.