106 F.3d 1358
 1997 A.M.C. 2700, Fed. Carr. Cas. P 84,047,
31 UCC Rep.Serv.2d 769
 CHEMSOURCE, INCORPORATED, as Assignee of Pro-Pack,
Incorporated, doing business as Barton Chemical
Company, Plaintiff-Appellant,
v.
HUB GROUP, INCORPORATED and Hub City Houston Terminals,
Incorporated, Defendants-Appellees.
 No. 96-2804.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 7, 1997.
Decided Feb. 13, 1997.
 
 Joel H. Steiner (argued), Paul A. Gajewski, Axelrod, Goodman, Steiner & Bazelon, Chicago, IL, for Plaintiff-Appellant.
 Christopher T. Sheean, Stephen R. Meinertzhagen, Keck, Mahin & Cate, Chicago, IL, Thomas W. Snyder (argued), Schuyler, Roche & Zwirner, Chicago, IL, James D. Adducci, Adducci, Dorf, Lehner, Mitchell & Blankenship, Chicago, IL, for Defendants-Appellees.
 Before FAIRCHILD, CUMMINGS and KANNE, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 On July 15, 1994, Pro-Pack, Inc.* ordered 9,716 gallons of ethylene glycol from Third Coast, a Texas corporation that is a contract blender and packager of antifreeze, brake fluid and lubricants and is located in Friendswood, Texas. On that date Third Coast invoiced Pro-Pack for $17,164.60 and transferred the glycol in its books to Pro-Pack's inventory at Third Coast. Pro-Pack never paid Third Coast for this glycol. Under Third Coast's accounting method, this glycol order made up approximately 75 percent of the glycol used in the shipments in question. The other 25 percent was made up of glycol that Pro-Pack had shipped to Third Coast from Dow Chemical.
 
 
 2
 On July 27, 1994, Pro-Pack ordered 50,000 antifreeze bottle caps from Third Coast, which invoiced Pro-Pack in the amount of $2,250 and transferred the caps in its books to Pro-Pack's inventory at Third Coast. Pro-Pack never paid Third Coast for these caps. About the same date Pro-Pack requested Third Coast to blend, package and ship 756 cases of antifreeze for Filters R Us in South San Francisco, California, 576 cases and 20 drums of antifreeze for Pollard Swain in Orange, California, and 361 cases and 44 drums of antifreeze for Pacific Coast Warehouse in Chino, California. These orders left Pro-Pack with no glycol at Third Coast. In the following days, Third Coast invoiced Pro-Pack for these shipments, but as with the glycol and bottle caps Pro-Pack never paid Third Coast.
 
 
 3
 Defendant Hub Group is an incorporated association owned by a group of member corporations which are the actual operating companies. It acts as a central location for support services such as information systems, tracing, billing and negotiation of contracts with vendors, such as railroads, for member corporations. The member corporations arrange for the transportation of goods, using the services of truckers and railroads to physically transport freight tendered by customers. Each member corporation advances the costs of carriage to carriers on their customer's behalf, and then presents those charges to the customer in a single invoice. Defendant Hub City is a member corporation.
 
 
 4
 In late July 1994, Third Coast contacted Hub City to arrange for the transportation of the foregoing three shipments of antifreeze from Third Coast. Hub City then arranged with Esco Transportation, a trucking company, and the Santa Fe railroad to transport the shipments. Esco picked up these three shipments from Third Coast on July 28, 29 and 30, 1994 and delivered them to the Santa Fe railroad for transportation to California. Each of the shipments was a carload quantity of antifreeze. At Third Coast's instructions, Hub City sent Pro-Pack three separate invoices for this transportation.
 
 
 5
 About August 1, 1994, while the antifreeze was in transit, James Clawson of Third Coast received a telephone call from Dave Green, a salesman for Pro-Pack. Green told Clawson that Pro-Pack was running down its inventory at all of its suppliers with plans to go into bankruptcy, just as Pro-Pack's predecessor Barton had done. Clawson remembered that Third Coast had not received payment on outstanding invoices from Barton before it filed for bankruptcy. He then contacted Hub City and told it to reconsign the three shipments to different destinations and that Third Coast had sufficient title to order the reconsignment.
 
 
 6
 In mid-August 1994, Third Coast received a letter from Pro-Pack's assignee informing it that on August 3, 1994, Pro-Pack had assigned its assets for the benefit of its creditors and that therefore Third Coast would most likely receive nothing for its outstanding invoices. At that time Pro-Pack had $40,000 in outstanding invoices due Third Coast, half being unrelated to the amount in question here. Ultimately, Third Coast received nothing from Pro-Pack or its assignee in satisfaction for these outstanding invoices. While the three shipments of antifreeze were in transit to Pro-Pack customers, they were, as noted, reconsigned by Hub City at Third Coast's direction.
 
 
 7
 Plaintiff Chemsource, Inc., the Illinois corporation assignee of Pro-Pack, filed an amended complaint alleging in Count I that defendants Hub City and the Hub Group are liable as freight forwarders under the 1906 Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707 (subsequently codified at 49 U.S.C. § 14706), and in Count II that they are also liable under the common law of conversion. Judge Kocoras granted the defendants' motion for summary judgment. As to Count I, Judge Kocoras held that defendants were not "freight forwarders" subject to liability under the Carmack Amendment. As to Count II, he held that Chemsource did not show an immediate and absolute right to possession of the antifreeze shipments so that conversion by defendants would apply. We affirm.
 
 Standard of review
 
 8
 We review a district court order granting summary judgment de novo. See Walker v. Shansky, 28 F.3d 666, 670 (7th Cir.1994). Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Once a motion has been filed for summary judgment, the burden shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. See Id.
 
 
 9
 Plaintiff did not demonstrate that Hub City was a freight forwarder under the Carmack Amendment
 
 
 10
 The Carmack Amendment to the Interstate Commerce Act imposes liability for nondelivery of goods on "carriers" and "freight forwarders." 49 U.S.C. §§ 14706, 13102(3) and (8). Plaintiff alleged that Hub City is a freight forwarder. However, in order to show that Hub City was a "freight forwarder" under the Carmack Amendment, plaintiff was required to show that Hub City did each of the following:
 
 
 11
 (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
 
 
 12
 (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
 
 
 13
 (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.
 
 
 14
 49 U.S.C. § 13102(8). With respect to clause (A) above, the Supreme Court has held that the term "assembles and consolidates" means the assembly or consolidation of less than carload quantities into carload shipments. See Chicago, Milwaukee, St. Paul & Pacific Railroad Co. v. Acme Fast Freight, Inc., 336 U.S. 465, 467, 484-486, 69 S.Ct. 692, 93 L.Ed. 817. The district court found that the record was "devoid of evidence that Hub City or the Hub Group engaged in the assembling and consolidating of less than carload quantities into carload shipments." Chemsource, Inc. v. The Hub Group, Inc., Memorandum Opinion of the District Court at 9, 1996 WL 374124 * 3 (N.D. Ill. June 27, 1996). Accordingly, the court found that the defendants were not "freight forwarders" subject to Carmack Amendment liability. Because plaintiff never argued nor presented any evidence to the district court that Hub City consolidates less than carloads of goods, this argument is waived because it was presented for the first time on appeal. Harris Trust and Savings Bank v. Provident Life and Accident Insurance Co., 57 F.3d 608, 614 (7th Cir.1995). Apparently as an alternative argument, plaintiff asserts that because the defendants take advantage of a volume discount in arranging for the shipment of full carload shipments, the defendants are somehow freight forwarders, but plaintiff has cited no cases for the proposition that this satisfies the first requirement for freight forwarder Carmack liability. As noted above, the Supreme Court has been clear: "assembles and consolidates" means assembles and consolidates less than carload quantities. Even if plaintiff has not waived this argument on appeal, we agree with the district court and the defendants that plaintiff simply has not provided any evidence that Hub City ever consolidated less than carload shipments.
 
 
 15
 Moreover, the district court also held that plaintiff did not demonstrate that Hub City "assumed responsibility for the shipments," the second requirement for freight forwarder Carmack liability. See 49 U.S.C. § 13102(8)(B). Indeed, Hub City's invoices stated that "it is neither an absolute nor a virtual insurer of the goods entrusted to it, and disclaims responsibility for the safe transportation of the goods moved in its services." Not only did all of the invoices in question contain this caveat, but Pro-Pack's representative admitted that Hub City never made any representation that it assumed responsibility for its customers' shipments, thus showing that defendant did not assume responsibility based on a prior course of dealing. Accordingly, we agree with the district court's finding that plaintiff had failed to establish that the defendants are freight forwarders for purposes of the Carmack Amendment. Summary judgment on Count I was therefore properly entered in favor of the defendants.
 
 Hub City did not convert plaintiff's goods
 
 16
 The Carmack Amendment preempts a state law conversion claim against a carrier or freight forwarder for loss or damage to interstate shipments. See North American Van Lines, Inc. v. Pinkerton Security Systems, Inc., 89 F.3d 452, 456 (7th Cir.1996). However, the district court exercised supplemental jurisdiction over plaintiff's conversion claim after dismissing its Carmack Amendment claim, and we accordingly have jurisdiction to review the merits of that claim. In any event, we affirm on the merits the district court's dismissal of plaintiff's conversion claim.
 
 
 17
 Plaintiff's predecessor Pro-Pack was insolvent and did not pay for a significant portion of the glycol or the bottle caps, additives or services rendered in blending and packaging the antifreeze at issue. Plaintiff argues on appeal that it had an immediate and absolute right to possess the shipments in question because it had "title" to the antifreeze due to the transfers made on Third Coast's books regarding the glycol and bottle caps. But Section 2-705 of the Uniform Commercial Code permitted Third Coast to stop delivery of the goods as soon as it discovered that Pro-Pack was insolvent regardless of where title lay. See In the Matter of Pester Refining Co., 845 F.2d 1476, 1482 (8th Cir.1988); In re Murdock Machine and Engineering Co., 620 F.2d 767, 773 (10th Cir.1980). Since Pro-Pack neither paid for the products nor ever had actual physical possession of the goods, its assignee Chemsource had no right to possession. Title remained in Third Coast. Defendant Hub Group never converted anything to which plaintiff was entitled; it merely followed the instructions of Third Coast which still had title to the goods.
 
 
 18
 Judgment affirmed.
 
 
 
 *
 Pro-Pack, Inc. previously did business as Barton Chemical Company of Chicago, Illinois