BYRTON DAIRY PRODUCTS, INC., a Corporation, Plaintiff,

v.

HARBORSIDE REFRIGERATED SERVICES, INC., a Corporation, and Robbins Fleisig Forwarding, Inc., a Corporation, and Atchison Topeka and Santa Fe Railway Company, Defendants.

No. 96 C 1949.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 1, 1997.

Stacey Lee Prange, Chapman & Cutler, Chicago, IL, Robert O. Case, Thomas P. Ward, Antonia Sexton Pritchard, McBride, Baker & Coles, Chicago, IL, for Bryton Dairy Products, Inc., a corporation, plaintiff.

Steven Brian Belgrade, John Andrew O'Donnell, George Mario Velcich, Belgrade & O'Donnell, Chicago, IL, Andrea Jean McIntyre, Howard & McIntyre, P.C., Chicago, IL, for Harborside Refrigerated Services, Inc., a corporation, defendant.

Patrick J. Keating, Robert C. Von Ohlen, Jr., Kaplan, Begy & von Ohlen, Chicago, IL, for Robbins Fleisig Forwarding, Inc., a corporation, defendant.

John C. Palmer, Jr., Chicago, IL, Orest B. Dachniwsky, Atchison, Topeka and Santa Fe, Railway Company, Law Dept., Schaumburg, IL, for Atchison Topeka and Santa Fe, Railway Company, third-party defendant.

## MEMORANDUM OPINION AND ORDER

HART, Senior District Judge.

This case involves a dispute over who is responsible for two boxcars of dry milk becoming spoiled when shipped from Houston, Texas to Vermont. Each of four parties denies it was responsible for the spoilage while pointing the finger at one or more of the other parties. There does not seem to be any serious contention that the seller of the milk, plaintiff Byrton Dairy Products, Inc., is responsible. The milk could have been spoiled by its warehouser, defendant Harborside Refrigerated Services, Inc., either by deficient storage, the manner of loading the boxcars, or by contributing to a delay in delivery. Fingers are also pointed at defendant Robbins Fleisig Forwarding, Inc., which arranged for the transportation of the milk, and defendant Atchison, Topeka & Santa Fe Railway Company, a carrier of the milk, based on claimed delays in transporting the milk and for choosing to transport the milk in unrefrigerated boxcars.

There is complete diversity of citizenship and the amount in controversy exceeds $50,000. The counts of Byrton's First Amended Complaint are as follows. Count I is a bailment claim against Harborside alleging the milk was damaged and water soaked when delivered to the interstate carriers. Count II is a statutory claim against Robbins pursuant to 49 U.S.C. § 11706 and/or § 14706. It is alleged that Robbins is a freight forwarder and that the milk was in good condition at the time plaintiff contracted with Robbins. Count III is a breach of contract claim that Robbins acted with unreasonable delay in arranging for shipment thereby causing the milk to become spoiled. Count IV is a claim against Santa Fe pursuant to § 11706, claiming that Santa Fe received the milk in good condition and that the milk was spoiled when it arrived in Vermont. Count V is a bailment claim against Santa Fe and again alleges Santa Fe received the milk in good condition.

Defendants have also filed cross claims against each other. Harborside cross claims against both Robbins and Santa Fe, claiming contribution and indemnity for any damages to Byrton for which Harborside may be found liable. Similarly, Santa Fe cross claims against Harborside and Robbins based on contribution and indemnity. Prior to the filing of the First Amended Complaint which added Santa Fe as a defendant, Robbins filed a third-party complaint against Santa Fe, which now stands as its cross claim.[1] Robbins divides its claims against

---

1. Robbins has not answered the First Amended Complaint. It apparently relies on its answer to

Santa Fe into five counts and labels them as follows: (I) statutory liability—Carmack Amendment; (II) contribution; (III) indemnity; (IV) negligence; and (V) breach of contract.

Presently pending are various motions for summary judgment brought by each defendant. Defendants seek to dismiss or limit the claims against them by plaintiff, as well as to dismiss or limit some of the cross claims between the defendants. Harborside relies in part on the contention that the undisputed facts show it did not cause the spoilage. The motions of Robbins and Santa Fe are not based on factual contentions as to which party caused the spoilage.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the non-movant and all factual disputes resolved in favor of the nonmovant. *Valance v. Wisel*, 110 F.3d 1269, 1274 (7th Cir.1997); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir.1997). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). The nonmovant, however, must make a showing sufficient to establish any essential element for which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 236 (7th Cir.), *cert. denied*, 515 U.S. 1104, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir.1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476–77 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988). As the Seventh Circuit has summarized:

the original complaint which, as to Robbins, is essentially the same as the First Amended Com-

The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *id.* at 325 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of proving at trial, the non-moving party must come forward with affidavits, depositions, answers to interrogatories or admissions and designate specific facts which establish that there is a genuine issue for trial. *Id.* at 324. The non-moving party cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992).

Before the milk was purchased by Byrton, Robbins, on behalf of the then owner of the

plaint.

milk, had arranged to have it transported to Harborside's Houston warehouse for storage. The milk remained there when purchased by Byrton. In December 1994, Byrton contracted to sell 1,600 tons of the milk for use at a baby food plant in Vermont. One hundred twenty-five tons was transported by truck and Byrton retained Robbins to make arrangements to transport the other 1,475 tons by rail to a train yard in Vermont near the baby food plant. By February 1995, 16 boxcars had been sent to Vermont. The remaining milk, which was in approximately 8,700 55–pound bags, was enough for three more boxcars. On May 5, 1995, three empty boxcars were spotted at a siding · for Harborside's warehouse. Harborside was responsible for loading the boxcars. The parties agree the boxcars were loaded by May 9 and that they nevertheless remained in Houston until the end of May or early June. The last three boxcars each arrived separately in Vermont from the beginning of June to the end of June. The first to arrive contained unspoiled milk. The last two to arrive contained spoiled milk unfit for human consumption. The spoiled milk was sold as salvage to an animal feed processor.

■ Harborside contends it is entitled to summary judgment on the ground that the undisputed evidence shows it properly loaded the last two cars and provided them to Santa Fe in unspoiled condition. Byrton contends that there is a genuine factual dispute because there is evidence from which it can be inferred that the milk was damaged by rain either during loading or while sitting in a staging area before being loaded. Santa Fe contends there are also genuine factual disputes that: (1) some damage that would have caused further spoilage during shipping had occurred while the milk was still at the warehouse, (2) Harborside did not properly load the milk, including by not packing it in shrinkwrap, and (3) Harborside caused delays in notification of Santa Fe that the boxcars had been loaded, thus contributing to the delay in the boxcars arriving in Vermont.

Harborside does not respond to Santa Fe's contentions. Therefore, Santa Fe's contentions will be taken as true for purposes of Harborside's motion for summary judgment.

It is also found that a genuine factual dispute exists as to whether Harborside's loading of the milk contributed to the milk becoming wet from rain or humidity. Because a genuine factual dispute exists as to whether Harborside was a cause of the spoilage of the milk, Harborside is not entitled to summary judgment. Its summary judgment motion will be denied.

■ Santa Fe seeks partial summary judgment dismissing the claims and cross claims against it that are based on the Carmack Act. It contends that all claims against it must be directly based on its contract with Robbins, which incorporates Santa Fe's "Boxcar Circular." However, the Seventh Circuit has held that such claims are considered to be under the Carmack Act. *Tokio Marine & Fire Insurance Co. v. Amato Motors, Inc.,* 996 F.2d 874 (7th Cir.1993). Santa Fe contends *Tokio Marine* was wrongly decided. That, however, is not an issue for this court, which is bound to follow the decisions of the Seventh Circuit unless powerfully convinced that the Seventh Circuit would rule otherwise at the first opportunity. *See Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123 (7th Cir.1987); *Brenner v. Brown,* 814 F.Supp. 717, 718 (N.D.Ill.1993); *Sokaogon Chippewa Community v. Exxon Corp.,* 805 F.Supp. 680, 695 n. 14 (E.D.Wis.1992), *aff'd,* 2 F.3d 219 (7th Cir.1993), *cert. denied,* 510 U.S. 1196, 114 S.Ct. 1304, 127 L.Ed.2d 655 (1994). No court, either within this circuit or outside it, has directly criticized or questioned the decision in *Tokio Marine.* No sufficient basis is presented for declining to follow *Tokio Marine.* Santa Fe's motion for summary judgment will be denied.

■ Robbins moves for partial summary judgment as against Byrton dismissing the Carmack Act claim on the ground that Robbins was not acting as a freight forwarder and therefore that Act is inapplicable to it. Robbins further contends that the remaining common law contract claim would then be subject to a contractual limit of liability of $50 per shipment.

Robbins does not dispute that it is licensed as a freight forwarder and that it sometimes acts as a freight forwarder. It contends that

it was not a freight forwarder for Byrton because it did not provide all the services that a freight forwarder ordinarily provides. Byrton contends that an entity that offers all the services of a freight forwarder will be considered a freight forwarder even when it provides only some of those services to a particular customer.

The term "freight forwarder" is defined in the statute.

(8) The term "freight forwarder" means a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business—

(A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;

(B) assumes responsibility for the transportation from the place of receipt to the place of destination; and

(C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.

The term does not include a person using transportation of an air carrier subject to part A of subtitle VII.

49 U.S.C. § 13102(8).

To be classified as a freight forwarder, subsections (A), (B), and (C) must all apply. *Chemsource, Inc. v. Hub Group, Inc.,* 106 F.3d 1358, 1361 (7th Cir.1997). "[T]he term 'assembles and consolidates' means the assembly or consolidation of less than carload quantities into carload shipments." *Id.* The statute defines a "broker" as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). A broker does not have a role in the actual assembly or carriage of the goods. *Transportation Revenue Management, Inc. v. First NH Investment Services Corp.,* 886 F.Supp. 884, 886 (D.D.C.1995).

Court cases and an administrative decision have held that an entity may be classified as a freight forwarder even if, as to the shipment under consideration, it does not perform all the functions set forth in § 13102(8)(A), as long as it proffers all those services. *Phoenix Assurance Co. v. K–Mart Corp.,* 977 F.Supp. 319, 324 (D.N.J.1997); *Metropolitan Shipping Agents of Illinois, Inc. v. United States,* 342 F.Supp. 1266, 1269 (D.N.J.1972); *Superior Transportation Systems, Inc.—Petition for Declaratory Order—Classification of Operations Conducted for Boise Cascade Corp.,* 1995 WL 623273 *2 (I.C.C. Oct. 18, 1995). *Cf. National Motor Freight Traffic Association, Inc. v. United States,* 205 F.Supp. 592, 594–97 (D.D.C.1962), *aff'd,* 372 U.S. 246, 83 S.Ct. 688, 9 L.Ed.2d 709 (1963) (per curiam). At least one case has held to the contrary, *Pacific Austral Party, Ltd. v. Intermodal Express, Inc.,* 1990 WL 141010 *2 (N.D.Ill. Sept.26, 1990), and another case has indicated agreement with *Pacific Austral,* but then decided the case on other grounds, *see Independent Machinery, Inc. v. Kuehne & Nagel, Inc.,* 867 F.Supp. 752, 759 (N.D.Ill.1994). Whether an entity will be considered a freight forwarder as to a particular shipment for which it does not perform all the freight forwarder services may depend on the frequency with which its other brokerage/forwarding work involves providing all the freight forwarder services. *See Superior Transportation,* 1995 WL 623273 at *2 ("If STS assumes responsibility for the shipments it handles; uses other regulated carriers for part of the transportation; and proffers and has the capacity to perform all four elemental services—even if consignees or consignors occasionally may request and receive from STS less than all of those services—it qualifies as a freight forwarder. If STS proffers but does not actually perform these services, or performs them only occasionally, there can be no assurance that STS would be found to be acting as a freight forwarder."). Regardless of what the correct rule may be as to Subsection (A), Subsections (B) and (C) do have to be satisfied as to the particular shipment, *see Chemsource,* 106 F.3d at 1362; *Superior Transportation,* 1995 WL 623273 at *2, and there

is controlling Seventh Circuit precedent, at least as to (B), *see Chemsource, supra.*

It is undisputed that Robbins is licensed as a freight forwarder and that it offers the full services of a freight forwarder to the general public. Byrton contends that Robbins provided all the services enumerated in subsection (A) with respect to the milk involved in the present case. However, the evidence submitted by Byrton does not support that contention. Even taking into account services that Robbins provided for the company from which Byrton purchased the milk, there is no evidence of any consolidation of less than carload shipments into carload shipments. Whether subsection (A) is satisfied because Robbins proffers such services to the public and provides such services to other customers need not be decided, because there is insufficient evidence that subsection (B) is satisfied.

In *Chemsource,* 106 F.3d at 1362, the Seventh Circuit held that subsection (B), assuming responsibility for the shipment, was not satisfied where each invoice contained the disclaimer that the purported freight forwarder "is neither an absolute nor a virtual insurer of the goods entrusted to it, and disclaims responsibility for the safe transportation of the goods moved in its services." It was also stated in *Chemsource* that there was no evidence of any contrary oral representations or contrary prior course of dealing.

The reverse side of the invoice or invoices pertinent to the present dispute provided in part:

## TERMS AND CONDITIONS OF SERVICE

### (Please Read Carefully)

\* \* \*

1. Services by Third Parties. Unless the Company [Robbins] carries, stores, or otherwise physically handles the shipment, and the loss damage expense or delay occurs during such activity, the Company assumes no liability as a carrier and is not to be held responsible for any loss, damage, expense, or delay to the goods to be forwarded or imported except as provided in paragraph 10 and subject to the limita-

tions of paragraph 8 below, but undertakes only to use reasonable care in the selection of carriers, truckmen, lightermen, forwarders, customhouse brokers, agents, warehousemen and others to whom it may entrust the goods for transportation, cartage, handling and/or delivery and/or storage otherwise. When the Company carries stores or otherwise physically handles the shipment, it does so subject to the limitations of liability set forth in paragraph 8 below unless a separate bill of lading, air waybill or other contract of carriage is issued by the Company, in which event the terms thereof shall govern.

2. Liability Limitations of Third Parties. The Company is authorized to select and engage carriers, truckmen, lightmen, forwarders, customhouse brokers, agents, warehousemen and others, as required, ... all of whom shall be considered as the agents of Customer, .... The Company shall under no circumstances be liable for any loss, damage, expense or delay to the goods for any reason whatsoever when said goods are in custody, possession or control of third parties selected by the Company to forward, enter and clear transport or render other services with respect to such goods.

\* \* \*

7. Insurance. The Company will make reasonable efforts to effect marine, fire, theft, and other insurance upon the goods only after specific written instructions ... and the Customer at the same time states specifically the kind of insurance to be placed....

8. Limitation of $50 Per Shipment. The Customer agrees that the Company shall in no event be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company for any amount in excess of $50.00 per shipment.... The Customer has the option of paying a special compensation to increase the liability of the Company in excess of $50 per shipment....

* * *

10. Liability of Company. It is agreed that any claim or demand for loss, damage, expense or delay shall be only against the carriers, truckmen, lightermen, forwarders, customhouse brokers, agents, warehousemen or others in whose actual custody or control the goods may be at the time of such loss, damage, expense or delay, and that the Company shall not be liable or responsible for any claim or demand from any cause whatsoever unless in each case the goods were in the actual custody or control of the Company and the damages alleged to have been suffered be proven to be caused by the negligence or other fault of the Company, its officers or employees, in which event the limitation of liability set forth in paragraph 8 herein shall apply. The Company shall not in any circumstances be liable for damages arising from loss of profit.

From June 1990 to June 1995, Byrton had used Robbins's services on at least 59 occasions, all involving use of this same invoice form.

Byrton contends that Robbins took responsibility for the shipment because it made all the arrangements for transportation from Houston to Vermont without input from Byrton. *Chemsource,* however, makes clear that arranging the transportation does not trigger subsection (B), the forwarder must also take responsibility for the safety of the goods, including financial responsibility for damage. *See also Independent Machinery,* 867 F.Supp. at 760 n. 7. As in *Chemsource,* the invoice in the present case disclaims any such financial responsibility. Therefore, as long as the language on the reverse side of the invoice states the contractual terms between Robbins and Byrton, Robbins was not a freight forwarder because it did not take full responsibility for the transportation.

Robbins contends that the enforceability of the terms on the invoice are established by its prior course of dealing with Byrton which always involved invoices containing these terms. Therefore, even if the invoice was not provided until after the shipping was requested or even took place, the terms on the invoice would still apply. *See Indepen-*

*dent Machinery,* 867 F.Supp. at 760. Byrton does not contend that any prior dealings showed that these terms had not been accepted nor does it point to any evidence that Robbins made contrary oral promises as regards the specific shipments in dispute. Byrton does not even address the responsibility issue in its brief other than to conclusorily assert that Robbins "had **sole** responsibility for all phases of transportation from the Harborside warehouse to Vermont," Byrton's Brief at 7, and to attempt to distinguish *Chemsource* on the ground that it was clear in that case that the forwarder had not assumed responsibility, Byrton's Brief at 8. Although not specifically raised in its brief, in its Local Rule 12(N) Statement ¶ R13, Byrton states it "had never been made aware of 'Terms and Conditions of Service' printed in small type on the back of [Robbins]'s invoices it received." Even ignoring that any argument based on this fact is waived for failing to assert it in the brief along with a legal argument, Byrton's asserted ignorance is no basis for declining to apply this term based on the course of dealing. *Independent Machinery,* 867 F.Supp. at 760.

On the evidence and arguments before the court regarding Byrton's claim against Robbins, it must be held that the undisputed facts show Robbins did not accept full responsibility for the transportation and therefore was not acting as a freight forwarder. Therefore, the Carmack Act does not apply to Byrton's claim against Robbins. Count II of Byrton's First Amended Complaint will be dismissed.

As to the enforceability of the $50 per shipment limit of liability, Byrton makes no argument other than that limits of liability are unenforceable as to Carmack Act claims against freight forwarders. Since the Carmack Act is held to be inapplicable, no applicable ground is argued for declining to enforce the limitation of liability. It is held that Byrton's Count III claim against Robbins is limited to damages not in excess of $50 per shipment.

Robbins also moves for summary judgment as to the cross claims brought against it. It contends that contribution is inapplicable because contribution is limited to tort

actions and the claims for which contribution is sought are not tort claims. Robbins contends the indemnity claims fail because there is no contractual indemnity and no type of relationship or injury that would support implied indemnity.[2]

The claims for which contribution or indemnity would be sought must be divided into two categories. Counts I and V are state law bailment claims against, respectively, Harborside and Santa Fe. Count IV is a Carmack Act claim against Santa Fe. The latter will be considered first, since its resolution may be governed by federal law. The Carmack Act itself has a provision for indemnity. *See* 49 U.S.C. § 11706(b) ("the rail carrier issuing the receipt or bill of lading ... is entitled to recover from the rail carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property, ..."). That provision, though, is limited to indemnity from another rail carrier. Though rail carrier may be broadly defined,[3] Robbins does not appear to qualify as a rail carrier and there is no argument to that effect by Santa Fe.

■ Any indemnification or contribution claim by Santa Fe against Robbins, based on Santa Fe's Carmack liability to Byrton, would be based on federal common law principles, not state law. *See Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.,* 616 F.2d 619, 625–26 (2d Cir.1980), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *Hartog Trading Corp. v. M/V Presidente Ibanez,* 1991 WL 33605 *4–5(E.D.La. March 6, 1991). *Cf. Franklin Stainless Corp. v. Marlo Transport Corp.,* 748 F.2d 865, 868–70 (4th Cir.1984). Since it would be possible for Santa Fe to be strictly liable under the Carmack Act even though Robbins was partially or entirely at fault, the claims for contribution and indemnity for Santa Fe's potential Carmack liability to Byrton will not be dismissed. Also, as is discussed below, Robbins may be obliged to indemnify Santa Fe in accordance with the existing contract between the parties.

■ Still to be considered are contribution and indemnity for the state law bailment claims. The parties implicitly agree that Illinois law applies to such claims. Robbins argues there cannot be contribution for these claims because the claims against Harborside and Santa Fe are contract claims. Bailment, however, may sound in either tort or contract. *Liddle v. Salem School District No. 600,* 249 Ill.App.3d 768, 188 Ill.Dec. 905, 619 N.E.2d 530, 531 (5th Dist.1993); *Rajkovich v. Alfred Mossner Co.,* 199 Ill.App.3d 655, 145 Ill.Dec. 726, 557 N.E.2d 496, 499 (1st Dist. 1990); *D'Napoli Food Products, Ltd. v. Wisconsin Farm Lines, Ltd.,* 1985 WL 1376 *1 (N.D.Ill. May 16, 1985). Byrton's bailment claims against Harborside and Santa Fe may be characterized as negligence in handling, packing, or shipping the milk. To the extent either of those parties are held liable to Byrton, it may also be found that Robbins was also negligent in handling, packing, or shipping the milk. The contribution cross claims of Harborside and Santa Fe will not be dismissed.

■ Santa Fe contends its contract with Robbins is a basis for indemnity. It points to a provision that "Consignor shall be liable to carrier or to any other party for damages ... resulting from failure to comply with requirements in this circular, ... or from a failure of the consignor to load ... the lading properly, if such defect or failure is a proximate cause of the damage,.... Consignor agrees to indemnify and save harmless carrier from the loss and damage described above...." Robbins does not dispute that this is the applicable contract. Other provisions provide that the consignor or shipper is responsible for adequately packing the load and for determining that boxcars supplied by Santa Fe are suitable to protect and preserve

2. Harborside did not directly respond to this motion. However, to the extent any argument of Santa Fe also applies to Harborside, it will be considered as to Harborside as well.

3. A "rail carrier" is "a person providing common carrier railroad transportation for compensation." 49 U.S.C. § 10102(5). "Railroad" includes both the equipment and a terminal facility or yard. *Id.* § 10102(6). "Transportation" includes service related to movement by rail, including refrigeration, storage, and handling. *Id.* § 10102(9). *Cf. PNH Corp. v. Hullquist Corp.,* 843 F.2d 586, 590–91 (1st Cir.1988).

the lading. These contract provisions may be applicable, thus precluding the dismissal of the indemnity claim of Santa Fe.

 Santa Fe also relies on implied indemnity, contending it was acting pursuant to instructions from Robbins as to the use of nonrefrigerated boxcars. Santa Fe also points to evidence that Robbins supervised Harborside's loading of the boxcars. Following the passage of Illinois's Contribution Act, the Illinois Supreme Court has limited the continuing application of common law implied indemnity. See American National Bank & Trust Co. v. Columbus–Cuneo–Cabrini Medical Center, 154 Ill.2d 347, 181 Ill.Dec. 917, 609 N.E.2d 285, 287–89 (1992); Thatcher v. Commonwealth Edison Co., 123 Ill.2d 275, 123 Ill.Dec. 486, 527 N.E.2d 1261, 1263 (1988); Frazer v. A.F. Munsterman, Inc., 123 Ill.2d 245, 123 Ill.Dec. 473, 527 N.E.2d 1248, 1252–55 (1988). Implied indemnity is still viable under certain circumstances in strict liability actions where the indemnitee is faultless, see Frazer, 123 Ill.Dec. 473, 527 N.E.2d at 1254–55, and where a faultless principal has been held vicariously liable for conduct of its agent, American National, 181 Ill.Dec. 917, 609 N.E.2d at 289; Richardson v. Chapman, 175 Ill.2d 98, 221 Ill.Dec. 818, 676 N.E.2d 621, 630–31 (1997). It may also be the rule that a faultless agent is entitled to indemnification from the principal. Cf. Wright v. City of Danville, 174 Ill.2d 391, 221 Ill.Dec. 203, 675 N.E.2d 110, 119 (1996). It would be consistent with Frazer to reach such a conclusion, as long as the agent is without fault. For an agent to be faultless in following another's instructions, it must have had no duty to recognize the error in the principal's instruction or to otherwise act to prevent the injury. See Frazer, 123 Ill.Dec. 473, 527 N.E.2d at 1255 (owner of truck that caused injury not entitled to implied indemnity as against manufacturer of truck since owner was negligent in that it knew or should have known of the defect in the truck).

 To the extent that spoilage of the milk was caused in part by Santa Fe's or Harborside's contribution to delay or Harborside's failure to properly load or store the milk, such party's fault would preclude the application of implied indemnity. The only possible scenario where Santa Fe or Harborside could be found liable on the bailment claims while being faultless would be if the only causes of the spoilage was Robbins's instruction to use unrefrigerated cars and/or delay caused solely by Robbins, with the other defendants not contributing to delay and/or having no duty as regards the selection of unrefrigerated cars. Since that possibility cannot presently be eliminated, the possibility will be left open that Santa Fe and Harborside may be able to pursue implied indemnity as against Robbins. The issue may be more fully addressed at trial.

Santa Fe and Harborside are warned, however, that they must adequately brief both contribution and indemnity in their pretrial order trial briefs or such claims will be considered waived. Their briefing on these issues in response to summary judgment was far from adequate. Also, Santa Fe must address the issue of whether the existence of express indemnity provisions between it and Robbins overrides any possible claim for implied indemnity. Cf. Richardson, 221 Ill.Dec. 818, 676 N.E.2d at 630. Presently, though, Robbins's motion for summary judgment on the cross claims will be denied.

IT IS THEREFORE ORDERED that Santa Fe's motion for partial summary judgment [56–1], Harborside's motion for summary judgment [59–1], and Robbins's motion for summary judgment as to cross claims [77–1] are denied. Robbins's motion for summary judgment [78–1] is granted. Count II of the First Amended Complaint is dismissed. The damages claim in Count III of the First Amended Complaint will be limited to $50.00 per shipment. In open court on December 30, 1997 at 9:15 a.m., the parties shall present an original and one copy of a topbound, final pretrial order in full compliance with Local Rule 5.00.