**COMMERCIAL UNION INSURANCE CO., Plaintiff,**

v.

**FORWARD AIR, INC., Defendant.**

**No. 98 Civ. 6814(AGS).**

United States District Court, S.D. New York.

June 14, 1999.

Julia M. Moore, Nicoletti, Hornig & Sweeney, New York City, for Plaintiff.

**256**

Ilene J. Feldman, Gutterman & Associates, New York City, for Defendant.

## OPINION AND ORDER

SCHWARTZ, District Judge.

Before the Court are (1) defendant's motion for summary judgment, or, in the alternative, partial summary judgment, and (2) plaintiff's motion to dismiss defendant's eleventh affirmative defense. For the reasons stated herein, (i) defendant's motion for summary judgment is DENIED; (ii) defendant's motion for partial summary judgment is GRANTED; and (iii) plaintiff's motion is DENIED.

### FACTUAL BACKGROUND

The material facts are not in dispute for the purposes of this motion. Plaintiff Commercial Union Insurance Inc. ("Commercial") is a corporation incorporated in and with its principal place of business in Massachusetts. (Compl. ¶ 1.) Defendant Forward Air, Inc. ("Forward") is a corporation incorporated in and with its principal place of business in Tennessee. (Compl. ¶ 2; Answer ¶ 2.) Forward was at all pertinent times a broker duly licensed by the Interstate Commerce Commission. (Defendant's Rule 56.1 Statement ("Def.56.1") ¶ 2.)

New England Circuit Sales purchased 125 packages of computer hard drives (the "Shipment") from Computec America. (Compl. ¶ 6; Plaintiff's Response to Defendant's Notice to Admit, No. 1 ("Pl.Resp."), annexed as Exhibit 2 to the Affidavit of Ilene J. Feldman ("Feldman Aff.") at ¶ 1.) Plaintiff is the subrogated underwriter of New England Circuit Sales. (Compl. ¶ 3.) The Shipment was delivered to defendant Forward for shipment from Miami to Boston. (Compl. ¶ 7.) Forward did not actually transport the Shipment, nor did it act as a "carrier" under federal law with respect to the shipment. (Def. 56.1 ¶¶ 8, 9.) Forward was acting as a property broker, arranging for the Shipment's transportation by truck. (Affidavit of Julia M. Moore ¶ 8.)

The subject shipment weighed 3,356 pounds. (Def. 56.1 ¶ 3.) Forward took custody of the Shipment in Miami, and issued Airfreight waybill No. 2113785 ("Waybill"). (Compl. ¶ 7; Def. 56.1 ¶ 4.) The Waybill provided that:

> Unless otherwise agreed to in writing, the maximum liability for shortage or physical damage shall be fifty cents ($0.50) per pound. If the declared value of the shipment shown on the reverse side exceeds fifty cents ($0.50) per pound, an insurance surcharge of sixty-five cents ($0.65) per one hundred dollars, or portion thereof, excess value shall be assessed.

(*Id.* ¶ 7.) No value was declared on the Waybill. (*Id.* ¶ 5.) The parties dispute who filled out the Waybill. (Pl.Resp. ¶ 5.) Plaintiff alleges that the Shipment disappeared in transit while in Forward's custody, at a loss of approximately $380,000. (Compl. ¶¶ 9, 10.)

Plaintiff instituted the present action on September 25, 1998 seeking damages for the loss of the Shipment. Defendant moves for (1) summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), asserting that as a broker, it is lot liable for the loss of the Shipment; or (2) partial summary judgment, pursuant to Rule 56, asserting that, based on the limited liability provision of the Waybill, defendant's maximum liability is fifty cents per pound on the shipment. Plaintiff moves to strike defendant's eleventh affirmative defense, which is based on the limited liability provision of the Waybill.

### DISCUSSION

A court may grant summary judgment if it is satisfied that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The initial burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, and all inferences and ambiguities are resolved in favor of the party against whom summary judgment is sought. *Gal-*

lo v. *Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citations omitted). Because there are no material issues of fact remaining in this case with regard to the applicability of the limitation of liability provision of the Waybill, summary judgment is appropriate on that issue.[1]

### I. Federal Law Permits a Claim to be Asserted Against Defendant.

Defendant asserts that, because it is a broker, it is not subject to suit for plaintiff's loss. The Court disagrees.

Federal statutory law on this subject is governed largely by the Carmack Amendment to the Interstate Commerce Act of 1887. *See Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373, 377 (2d Cir.1994). The Carmack Amendment was passed in 1906, and addresses the "subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment." *Id.*

■ The Carmack Amendment includes a "savings clause" providing that "[e]xcept as otherwise provided in this subtitle, the remedies provided under this subtitle are in addition to remedies existing under another law or at common law." 49 U.S.C. § 15103 (1996). However, this savings clause has been interpreted in a very limited fashion. For instance, the Carmack Amendment has been held to preempt all state law on the issue of carrier liability:

[The Carmack Amendment] supersedes all the regulations and policies of a particular state upon the same subject. . . . It embraces the subject of the liability of the carrier . . . and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulations with reference to it.

*Adams Express Co. v. Croninger*, 226 U.S. 491, 505–6, 33 S.Ct. 148, 57 L.Ed. 314 (1913). Further, the Carmack Amendment so occupies the field that the Second Circuit has concluded that the statutory scheme provided by the Carmack Amendment is the exclusive remedy whereby a shipper may seek reimbursement from a carrier for damage to his or her property that occurred during shipment. *See Cleveland*, 30 F.3d at 380–381. Specifically, in addition to the fact that no state law claims against carriers survive the enactment of the Carmack Amendment, no federal common law claim against a carrier may be fashioned either. *Id.*

■ The parties agree that Forward is a broker, not a carrier, as defined by the Carmack Amendment. The Carmack Amendment does not provide for the liability of brokers. *See Custom Cartage, Inc. v. Motorola, Inc.*, No. 98 C 5182, 1999 WL 89563, *3 (N.D.Ill. Feb. 16, 1999) ("The Carmack Amendment is silent on the issue of broker liability.") The question therefore arises whether the Carmack Amendment should be viewed as a statute predominantly concerned with the liability of carriers, as defined in the Amendment,[2] or whether the Amendment should be considered as preempting *all* actions arising out the interstate shipment of goods. In short, this case requires the court to decide whether the Carmack Amendment, in omitting reference to the liability of brokers for damage to shipped goods, intended to afford brokers total immunity from such a suit. The Court concludes that the Carmack Amendment does not bar suits against brokers.

---

1. Because plaintiff's motion to strike defendant's eleventh affirmative defense raises essentially the same issue as defendant's motion for partial summary judgment, the Court will analyze the two together.

2. 49 U.S.C. § 13102(3) defines "[t]he term 'carrier' [as] a motor carrier, a water carrier, [or] a freight forwarder." *See also Phoenix Assurance Co. v. K–Mart Corp.*, 977 F.Supp. 319, 324, 325 (D.N.J.1997) (discussing the liability of freight forwarders).

To begin with, the language of the Carmack Act's savings clause suggests that the Carmack Amendment should not be read to displace all actions against entities against which it does not provide for liability. *See* 49 U.S.C. § 10103 ("the remedies ... are in *addition* to remedies existing under another law or at common law") (emphasis added). Similarly, the broad pronouncement of *Adams Express Co.* appears to have been predominantly concerned with preemption in the area of carrier liability. *See Adams Express Co.*, 226 U.S. at 505, 33 S.Ct. 148 (stating that the Carmack Amendment "embraces the subject of the liability of the *carrier*").

In support of this conclusion, district courts in other Circuits have found that although the Carmack Amendment defines a broker [3] but does not provide for broker liability, a cause of action may be asserted by a shipper against a broker in federal court in a suit arising out of loss or damage to goods shipped by a carrier. *See Custom Cartage*, 1999 WL 89563 at *3 ("[v]arious courts have implicitly recognized that brokers may still be liable on various causes of action outside of the Carmack Amendment") (citing *Byrton v. Dairy Products, Inc. v. Harborside Refrigerated Serv., Inc.*, 991 F.Supp. 977, 984 (N.D.Ill.1997) (upholding breach of contract claim against broker) and *Phoenix Assurance Co. v. K–Mart Corp.*, 977 F.Supp. 319, 325 (D.N.J.1997) (implying that a broker may be liable for its own negligence by stating that "a broker, if not negligent, is generally not liable for the value of goods lost in interstate commerce.")); *Acro Automation Sys., Inc. v. Iscont Shipping Limited*, 706 F.Supp. 413, 419 (D.Md.1989) (awarding summary judgment against broker in claim by shipper against broker, carrier, and third affiliated

company). "The Carmack Amendment streamlines and simplifies suits against carriers and freight forwarders. It does not exempt brokers from paying for their own negligence or prevent them from entering into contracts with shippers." *Custom Cartage*, 1999 WL 89563 at *3.

The Court recognizes that some of the broad language in *Cleveland* could be read to suggest that the *Cleveland* decision also applies to bar common law claims against brokers. The *Cleveland* court stated that "because the issue of a shipper's compensation for actual loss or injury to its property has been comprehensively and directly addressed by the Carmack Amendment, [any possible] federal common law cause of action ... is displaced by the Act that has established those remedies Congress deems appropriate in this field." *Cleveland*, 30 F.3d at 381.[4] However, the *Cleveland* court also stated that "the precise issue" was "whether federal common law claims arising out of a shipper's relationship with a *common carrier* are preempted by the Carmack Amendment." *Id.* at 388 (emphasis added). This language suggests that the court in *Cleveland* was focusing only on carrier liability, and that the broad language used by the court was meant only to bar common law claims that would supplement claims already available to that plaintiff against a particular defendant under the Carmack Amendment. *Cf. Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377 (5th Cir.1998) ("In actions seeking damages for the loss of property shipped in interstate commerce by a common carrier under a receipt or bill of lading, the Carmack Amendment is the shipper's sole remedy. That is, the Carmack Amendment preempts any common law remedy that increases the *carrier's* liability beyond the actual loss or injury to

---

**3.** *See* 49 U.S.C. § 13102(2).

**4.** *See also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (stating that "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.... The presumption that a remedy was deliberately omitted from a stat-

ute is strongest when Congress has enacted a comprehensive statutory scheme including an integrated system of procedures for enforcement.") (internal citations omitted). The Court concludes, however, that the integrated system of procedures created by the Carmack Amendment is only meant to cover the issue of carrier liability.

the property.") (emphasis added) (internal citations omitted). Applying this analysis, *Cleveland* can be seen as reserving judgment as to whether federal or state common law actions may be asserted against entities as to which the Carmack Amendment does not provide for liability. This reading of *Cleveland* and *Morris* allows them to be reconciled with the conclusions of the district courts that have permitted suits against brokers to go forward.

The Court therefore concludes that *Cleveland* did not address the issue of broker liability, and that it will follow the lead of other federal district courts such as the Northern District of Illinois in *Custom Cartage* and *Byrton* that have found that broker liability survives the enactment of the Carmack Amendment.[5]

## II. Whether Analyzed Under Federal or State Common Law, the Limitation on Liability in the Waybill Must be Upheld

Plaintiff's position on this motion is that defendant may not take advantage of the limitation of liability provision in the Waybill because the sections of the Carmack Amendment that permit limitations on liability to be imposed on a shipper may only be invoked by a carrier. However, the Court concludes that the reason that the Carmack Amendment does not specifically permit a broker to limit its liability is that the Carmack Amendment does not concern itself at all with the issue of broker liability. Because the cause of action asserted against a broker arises under federal or state common law, not the Carmack Amendment itself, whether the limitation of liability provision may be enforced must

be determined under principles of federal or state common law.[6]

The question, therefore, arises whether the claims in this action should be considered to have arisen under state or federal common law.[7] Because the Court concludes that the limitation of liability provision would be binding on plaintiff under both state and federal common law, the Court will not reach this question at this stage. However, the Court notes that there is a strong argument that the Carmack Amendment preempts all state remedies by a shipper relating to the shipper's compensation for damage to property transported in interstate commerce by a carrier, including those state law claims that are asserted against defendants whose liability is not specifically provided for in the Amendment. This conclusion would leave to federal common law the issue of such claims against a broker. Finding preemption in cases such as this one would be consistent with previous cases that emphasize the intention of the Carmack Amendment to create uniform national rules to govern liability for damage to goods resulting from their interstate transportation by common carriers. *See, e.g., Adams Express Co.*, 226 U.S. at 507, 33 S.Ct. 148 (stating that permitting state claims against carriers would "result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to"); *Cleveland*, 30 F.3d at 379 ("[a] claim for breach of the implied covenant of good faith and fair dealing resulting in an award of punitive damages could well thwart one of the primary purposes of

---

5. The issue of whether actions against a broker should be considered to have arisen under state or federal common law will be considered in the following section.

6. The Court notes, however, that federal or state common law that is fashioned by the courts may not be inconsistent with the scheme provided for in the Carmack Amendment. *See Cleveland*, 30 F.3d at 379 (Carmack Amendment's savings clause "saves only those rights and remedies that are 'not

inconsistent with the rules and regulations prescribed by the provisions of [the Amendment]'") (citing *Adams Express Co.*, 226 U.S. at 507, 33 S.Ct. 148).

7. When an issue raises national concerns, but there is an "absence of an applicable Act of Congress[,] it is for the federal courts to fashion the governing rule of law according to their own standards." *Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

the Carmack Amendment; that is, to provide some uniformity ·in the disposition of claims brought under a bill of lading"); *Hughes· v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir.1987) ("The purpose of this statute is to establish uniform federal guidelines designed in part to remove the uncertainty surrounding a carrier's liability when damage occurs to a shipper's interstate shipment."). A remedy crafted under federal common law is much more likely to be nationally uniform than common law relying on the decisions of each individual state.[8]

■ The Court concludes that, under both state and federal common law, a contractual provision that provides a limitation of liability is binding under the circumstances of this case. *See Byrton*, 991 F.Supp. at 984 (limiting damages in a breach of contract claim against a broker to the amount specified in the contract; stating that "[s]ince the Carmack Act is held to be inapplicable, no applicable ground is argued for declining to enforce the limitation of liability."). *See also Ruston Gas Turbines Inc. v. Pan American World Airways*, 757 F.2d 29, 29 (2d Cir. 1985) (upholding a limitation of $0.50 per pound in an unregulated contract of carriage between shipper and carrier "under common law principles"); *First National Bank, Ames, Iowa v. Lanter Courier Corp.*, 992 F.2d 220, 223 (8th Cir.1993) (upholding limitation of liability provision in unregulated transportation contract); *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 193–5 (2d Cir.1989) (holding a limitation of liability provision in contract·between carrier and shipper to be enforceable under New York law; Uniform Commercial Code § 7–309 (providing that carrier and shipper may limit liability of carrier by contract).

The Court recognizes that a very strong burden is placed on a carrier when attempting to enforce a limitation of liability provision pursuant to the Carmack Amendment. *See. e.g., Novelty Textile Mills, Inc. v. C.T. Eastern, Inc.*, 743 F.Supp. 212, 216 (S.D.N.Y.1990). Because plaintiff does not assert that defendant has failed to satisfy the requirements set forth in the Carmack Amendment,[9] the Court need not address whether defendant, as a broker, is subject to similar restrictions under federal common law. The Court notes, however, that (i) it appears from the submissions that defendant would be found in. compliance with those requirements, and (ii) review of the statute and case law suggests that the extensive limitations imposed on carriers attempting to limit their liability should not necessarily be applied to claims against brokers.[10]

8. Additionally, at least one court has concluded that claims against a broker for indemnity are governed by federal common law. *See Byrton v. Dairy Products, Inc. v. Harborside Refrigerated Serv., Inc.*, 991 F.Supp. 977, 984, 985 (N.D.Ill.1997) (citing *Gordon H. Mooney, Ltd. v. Farrell Lines, Inc.*, 616 F.2d 619, 625–26 (2d Cir.1980)). *See also North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 234· (2d Cir.1978) (suit against air carrier arises under federal law despite lack of explicit statutory authority). *But see Roberts Distributor, Inc. v. Federal Express Corp.*, 917 F.Supp. 630 (S.D.Ind.1996) (questioning whether *North American Phillips Corp.* survives deregulation of the airline industry).

9. The "general thrust of the Interstate· Commerce Act plac[es] on the carrier absolute liability for loss or damage of" a shipper's goods. *See Novelty Textile Mills*, 743 F.Supp. at 216 (citing *Jones v. Yellow Freight System, Inc.*, 656 F.Supp. 550, 553 (M.D.Ga.1987).

As an exception to this general thrust, a carrier may limits its liability if specific procedures are followed. *See Novelty Textile Mills*, 743 F.Supp. at 216; 49 U.S.C. § 10730. In particular, a carrier that wishes to limit its liability under the Carmack Act must "(1) maintain a tariff in compliance with the requirements of the ·ICC, (2) give the shipper a reasonable opportunity to choose between two or more levels of liability, (3) obtain the shipper's agreement as.to his choice of liability, and (4) issue a bill of lading prior to moving the shipment that reflects the agreement." *See Acro Automation Sys., Inc. v. Iscont Shipping Limited*, 706 F.Supp. 413, 415 (D.Md.1989). Rates that include a limitation on liability are generally lower because the shipper becomes, in essence, a co-insurer of the shipment. *See Acro*, 706 F.Supp. at 415.

10. The restrictions on limitation of liability in 49 U.S.C. § 10730 are part of an overall stat-

Defendant has established that the limitation of liability clause in the Waybill must be enforced under the circumstances of this case. Plaintiff had the opportunity to declare a higher value for shipment but did not do so as required by the contract of carriage in order to avoid the effects of the limitation of liability. Further, plaintiff paid the lower rate that was applicable to a shipment with the limitation of liability provision in effect. The Court finds that plaintiff contractually agreed to the limitation on liability and cannot escape the terms of its contract at this late date.

Plaintiff's reliance on *Acro,* which did not permit one of the defendants, Bekins High Technologies International ("Bekins HiTech"), an unlicensed broker, to enforce a limitation of liability, *see* 706 F.Supp. at 419, is misplaced. In *Acro,* three affiliated defendants, only one of whom was a carrier under the Carmack Amendment, were sued by a shipper. *Id.* The Court did not permit any of the defendants to take advantage of the limitation of liability provision because, (i) the provision was located in a bill of lading issued by the carrier *after* receipt of the goods, and the carrier failed to comply with 49 U.S.C. § 10730, *see* 706 F.Supp. at 418–19; (ii) the shipper had not signed the applicable portion of the bill of lading limiting liability, and it was not clear that the shipper had actually agreed to the limitation, *see id.* at 416; and (iii) it did not appear that the shipper had paid the reduced tariff applicable to shipments with the limitation of liability, *see id.* at 418. The *Acro* court did state, in dicta, that "as an alternative basis for the decision," it could find that the Carmack Amendment "allows only carriers, as defined by the Act, to limit their liability, [and that] these defendants are not entitled to limit their liability in the manner specified by the Act." *Id.* at 419. However, because (i) the alternative bases of

decision distinguish *Acro* from this case, (ii) the language in *Acro* relied upon by plaintiff is dicta and ambiguous, and (iii) this issue was not fully litigated in *Acro, see id.* at 419 ("[t]hese defendants do not contest this"), the Court finds that the decision in *Acro* does not allow plaintiff to avoid the limitation of liability provision to which it contractually agreed.

In sum, the Court finds that plaintiffs common law claims may be asserted against defendant despite the fact that the Carmack Amendment does not provide for broker liability for goods lost or damaged during transport by a carrier. These claims, however, are governed by state or federal common law, both of which permit the limitation of liability provision in the Waybill to be enforced. Plaintiff's relief is therefore limited in the manner stated in the Waybill.

## CONCLUSION

For the reasons stated herein, (1) defendant's motion for summary judgment is DENIED; (2) defendant's motion for partial summary judgment is granted; and (3) plaintiff's motion for partial summary judgment is DENIED.

SO ORDERED.

---

utory scheme "reliev[ing] shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *See Reider v. Thompson,* 339 U.S. 113, 119, 70 S.Ct. 499, 94 L.Ed. 698 (1950).

The fact that broker liability is not provided for in the statute suggests that suits against brokers are not an integral part of that statutory scheme. Further, a shipper will ordinarily have recourse to a carrier in the event of damage to his goods.